[No. 58122-3.   En Banc.   December 5, 1991.]

BERNARD KENDALL, ET AL, *Appellants*, v. DOUGLAS, GRANT, LINCOLN, AND OKANOGAN COUNTIES PUBLIC HOSPITAL DISTRICT NO. 6, *Respondent*.

2

*Underwood, Campbell, Brock & Cerutti, P.S.,* by *Kenneth D. Carpenter,* for appellants.

*Foster Pepper & Shefelman, Thomas F. Ahearne,* and *Karen J. Boyle,* for respondent.

SMITH, J. — This is an appeal by taxpayers on direct review from the Grant County Superior Court challenging the validity of a hospital district formed to take over operation of the Coulee Hospital in Grand Coulee, Washington. Appellants/Cross Respondents (Appellants) are property owners in the Hartline District of Grant County, one of the counties constituting Hospital District Number 6. Respondent/Cross Appellant (Respondent) is Douglas, Grant, Lincoln and Okanogan Counties Public Hospital District

Number 6. The trial court granted summary judgment in favor of Respondent, dismissing Appellants' action with prejudice. We affirm the trial court.

In July 1990, a petition was filed in the Grant County Auditor's Office requesting formation of a multicounty hospital district. The boundary lines incorporated the counties of Grant, Douglas, Lincoln, Ferry[1] and Okanogan. The county commissioners for each county acted independently on the petition.

On August 2, 1990, the Grant County Auditor certified that the minimum required number of Grant County voters had signed the petition, which was then submitted to the Grant County Board of Commissioners pursuant to RCW 70.44, which authorizes public hospital districts. The Commissioners during the following 2 months held several hearings on the proposed hospital district. In addition to testifying at these hearings, certain Hartline residents, including Appellants, expressed dissatisfaction with the proposed boundary lines and requested that they be redrawn. They also filed a petition with the Commissioners.[2]

On August 20, 1990, the Grant County Commissioners issued Resolution 90-76-CC, giving notice of a public hearing to be held on September 4, 1990, regarding the petition to form a hospital district. On September 4, 1990, a hearing on the petition was begun in Grand Coulee and continued to September 11, 1990, at the County Commissioners' hearing room in Ephrata. On September 11, 1990, Grant County Commissioners denied Appellants' request to have the boundary lines redrawn, concluding that it was "convenient

---

[1]Ferry County Commissioners entered an order declaring that no land within Ferry County "shall be included within the District" because its land was improperly included in Hospital District 6. At the time, there was a proposed annexation of Ferry County land to Public Hospital District Number 1.

[2]The opposition was expressed through petitions signed by residents of the District and submitted to the Grant County Commissioners which stated:

"We, the undersigned, registered voters, residing within the boundaries of Grant County Cemetery District #3, are opposed to the inclusion of our district into the proposed Coulee Community Hospital District."

and just" for the boundary lines to remain as proposed and that it would be submitted to the voters at a general election for approval.

On September 18, 1990, Grant County Commissioners confirmed their earlier decision and on September 20, 1990, enacted County Resolution 90-93-CC, formally defining the area of Grant County to be included within the boundary of the proposed Hospital District and making a finding that the adjusted boundary was "reasonable, just and conducive to the welfare and convenience" of Grant County residents within the proposed hospital district.[3]

On September 4, 1990, Lincoln County Commissioners held hearings on the petition. That hearing was continued to September 6, 1990. Two additional hearings were held on September 17, 1990, and September 21, 1990. On September 21, 1990, the Commissioners issued a resolution "establishing and defining the area of the County to be included in the proposed District." The Commissioners found the "boundary lines . . . reasonable and just and conducive to the welfare and convenience of the residents of the County living within the proposed District."

On September 4, 1990, Okanogan County Commissioners held a "fact finding public meeting" on the petition and a public hearing on September 10, 1990. On September 21, 1990, in Resolution 76-90, the Commissioners established and defined the area of the County to be included in the proposed District. They also determined that "such boundary lines are reasonable and just and conducive to the welfare and convenience of the residents of the county living within the proposed District."

On September 21, 1990, Douglas County Commissioners issued Resolution C.E. 90-75 establishing and defining the area of the County to be included in the proposed District. They also determined that "such boundary lines are reasonable and just and conducive to the welfare and con-

---

[3]The adjusted boundary included 93 percent of the entire county. The statute, RCW 70.44, authorizes county commissioners to initiate proceedings for creation of hospital districts by resolution.

venience of the residents of the County living within the proposed District."

With the exception of Okanogan County, each participating County reduced the amount of property originally included in the Hospital District as permitted under RCW 70.44.035. Douglas County reduced the total acres involved by 99.5 percent; Ferry County by 100 percent; Lincoln County by 88 percent; and Grant County by 7 percent. The property included by Douglas County before withdrawal had an assessed valuation of $10,955,926; and after withdrawal, the remaining portion had an assessed valuation of $4,667,488. Ferry County withdrew all of its territory, with an assessed valuation of $5,524,707. The property included by Lincoln County before withdrawal had an assessed valuation of $11,775,820; after withdrawal, the remaining portion had an assessed valuation of $1,396,330. The property included by Grant County before withdrawal had an assessed valuation of $72,456,390. Only a nominal amount was withdrawn. Of that assessed valuation, the Hartline rural areas comprised $33,472,256. The town of Hartline alone comprised $3,139,502 of that assessed valuation. The property included by Okanogan County before withdrawal had an assessed valuation of $17,666,744. With no withdrawals, that remained unchanged. Approximately 271,360 acres of the Okanogan land was Indian trust property, leaving only 30,547 taxable acres of land in Okanogan County.

On November 6, 1990, pursuant to RCW 70.44.040 and RCW Title 54, voters in a general election in Douglas, Grant, Lincoln and Okanogan Counties passed the proposition for formation of Hospital District Number 6 with the redrawn boundaries.

On November 27, 1990, in the Grant County Superior Court, Bernard Kendall and Margaret Kendall, husband and wife; Lawrence Peterson and Betty Peterson, husband and wife; and Robert Osborne and Mary Osborne, husband and wife (Appellants) filed a complaint for declaratory judgment requesting the court to invalidate the formation of

Hospital District Number 6. Appellants are owners of real and personal property in the Hartline and Rural Hartline precincts of Grant County. Respondent is the Douglas, Grant, Lincoln and Okanogan Counties Public Hospital District Number 6 (Hospital District). Appellants did not name as parties nor serve the municipalities or the commissioners of either county. They named only the Hospital District. Nor did Appellants serve the Attorney General.

Appellants claim they are representative aggrieved taxpayers included in the Grant County area of the Hospital District. Appellants Kendall reside in the Rural Hartline precinct with real and personal property within the Hospital District. Appellants Osborne reside in the Hartline precinct and have real property in rural Hartline. Appellants Peterson reside in Lincoln County, but own real property in Grant County within the Hospital District.

On March 22, 1991, the Honorable Charles W. Cone, Grant County Superior Court, entered an order granting summary judgment to the Hospital District and dismissed the action with prejudice. That order upheld creation of the Hospital District. Appellants appealed to the Court of Appeals, Division Three, but on June 12, 1991, we granted the Hospital District's motion to transfer the matter to this court.

Four questions are presented in this case:

1. Whether the trial court erred as a matter of law when it granted summary judgment to the Hospital District;

2. Whether the trial court erred by assuming subject matter jurisdiction under the Uniform Declaratory Judgments Act;

3. Whether the valid creation of a hospital district requires that district boundary lines bear a rational relationship between the tax burden and the geographical area of usage in a multi-county hospital district; and

4. Whether the decision of the Grant County Commissioners not to exclude the property owners in Rural Hartline and Hartline precincts was arbitrary and capricious.

## I
### SUMMARY JUDGMENT

Appellants argue that Respondent Hospital District was not entitled to summary judgment as a matter of law because the trial court's review was limited to the administrative record of the Grant County Commissioners. They assert that pleadings and affidavits presenting material issues of fact indicate that there were actions taken in more than one county, but the administrative record was limited to the actions taken in Grant County; and that the affidavit of Ms. Carol Peterson relating to all issues was excluded from judicial review.[4]

Respondent notes that Appellants had requested consideration of the administrative record of only Grant County in the summary judgment proceedings. Respondent notes also that Ms. Peterson did not submit her affidavit until the summary judgment proceedings, long after the Commissioners' boundary decision was made and the Hospital District election was held; and that Appellants did not request relief pursuant to CR 56(f).[5]

■ The moving party in a summary judgment motion must show that judgment should be granted as a matter of law. There must be no genuine issue of fact upon which the trial would depend either in whole or in part.[6] Once the moving party establishes that there is no genuine issue of material fact, the burden shifts to the nonmoving party to

---

[4]Ms. Peterson is the daughter of Appellants Peterson and claimed to be spokesperson for residents of Rural Hartline.

[5]CR 56(f) states that:

**"When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

[6]*Atherton Condominium Apartment-Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

establish specific facts which demonstrate the existence of a genuine issue for trial.[7] The trial court should grant a motion for summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case.[8]

After considering the administrative record before it and concluding that the Grant County Commissioners had followed all proper legal procedures, the trial court granted summary judgment dismissing Appellants' action. We agree with the trial court.

Formation of the Hospital District was a direct result of action by the Grant County Commissioners and the voters of that county. Appellants assert that the Hospital District was not entitled to summary judgment as a matter of law by the court's limiting its review to the Grant County administrative record. They have cited no authority in support of that assertion, but argue that the affidavit of Ms. Carol Peterson "proves the Grant County record is incomplete . . .." That affidavit, consisting of mostly hearsay assertions, was filed on March 4, 1991, nearly 6 months after the hearings and the September 20, 1991, resolution of the Grant County Commissioners, but submitted to the trial court in the summary judgment motion.[9]

Additionally, Appellants only asked the trial court to review the administrative record of the Grant County Commissioners. They may not now complain of the court's failure to consider records beyond their request. Their citation of *Abbenhaus v. Yakima*[10] does not support their argument, but instead supports the trial court's action.

---

[7]*Atherton; Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

[8]*Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 148, 787 P.2d 8 (1990).

[9]See footnote 4.

[10]89 Wn.2d 855, 576 P.2d 888 (1978).

## II
### SUBJECT MATTER JURISDICTION UNDER
### THE DECLARATORY JUDGMENTS ACT

The Uniform Declaratory Judgments Act, RCW 7.24, governs the power of courts of record to declare rights, status and "other legal relations".[11] The rationale of the uniform declaratory judgments statute is "sufficiently broad to permit one specially affected (as distinguished from one affected merely as a member of the general public) to challenge the constitutionality" of a particular statute.[12] Respondent contends that under RCW 7.24.110, Appellants are required to join as a party "all persons . . . who have or claim any interest which would be affected by the declaration". None of the county commissioners were joined as parties under RCW 7.24.110.

RCW 7.24.110 states that:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. *In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.*

(Italics ours.)

█ Only the Hospital District is named as a party in this action. Yet Appellants seek by this declaratory judgment action to challenge formation of the Hospital District by the County Commissioners of Douglas, Grant, Lincoln and Okanogan Counties. The County Commissioners in each of those counties enacted resolutions declaring the proposed boundary lines and requesting the County Auditors to place the proposition on the ballot for vote by registered voters of the respective counties. Formation of Hospital District

---

[11]RCW 7.24.010.

[12]*Heavens v. King Cy. Rural Library Dist.,* 66 Wn.2d 558, 562, 404 P.2d 453 (1965).

Number 6 was the result of actions by the county commissioners in those counties. Appellants' failure to join the Counties as required by RCW 7.24.110 deprived the court of jurisdiction to grant declaratory relief.

The Commissioners of Douglas, Grant, Lincoln and Okanogan Counties were necessary parties under the Uniform Declaratory Judgments Act, they having taken action pursuant to the Public Hospital Districts Act, RCW 70.44. Appellants may not now challenge the actions of those Commissioners because of the limitation imposed by RCW 70.44.028,[13] which requires that lawsuits challenging the legal existence of hospital districts under the act be "commenced within thirty days after the date of the filing of the certificate of the canvass of an election on the proposition of creating a new public hospital district . . .."

■ Appellants' counsel in argument insisted that they were only indirectly challenging the constitutionality of the Hospital District statute, but also insisted that the Public Hospital Districts Act is facially unconstitutional. Having challenged the constitutionality of the statute, they were required by RCW 7.24.110 to serve the Attorney General "with a copy of the proceeding". This they did not do. This clearly deprives them of relief under the Uniform Declaratory Judgments Act, RCW 7.24.

In *Roehl v. PUD 1*,[14] this court determined that since a copy of the complaint was not served upon the Attorney General as required by RCW 7.24.110, the jurisdiction of the court was not invoked to obtain declaratory relief, but

---

[13]RCW 70.44.028 states that:

"**Limitation on legal challenges.** Unless commenced within thirty days after the date of the filing of the certificate of the canvass of an election on the proposition of creating a new public hospital district pursuant to chapter 70.44 RCW, no lawsuit whatever may be maintained challenging in any way the legal existence of such district or the validity of the proceedings had for the organization and creation thereof. If the creation of a district is not challenged within the period specified in this section, the district conclusively shall be deemed duly and regularly organized under the laws of this state." [Enacted by Laws of 1982, ch. 84, § 9.]

[14]43 Wn.2d 214, 244, 261 P.2d 92 (1953).

that lack of jurisdiction did not affect the validity of the portion of the judgment dismissing the complaint.[15] In this case, while the trial court did not have jurisdiction to grant relief under the Uniform Declaratory Judgments Act, it did have jurisdiction to dismiss Appellants' complaint.

## III
### BOUNDARY LINES, TAX BURDEN AND AREA OF MULTI-COUNTY HOSPITAL DISTRICT

RCW 70.44.035 authorizes a multi-county hospital district. Appellants contend that a review of the record should extend beyond the administrative record of the Grant County Commissioners, yet they failed to name Grant County or any of the other Counties as parties. They argue that a review of the record of other Counties would reveal that Grant County property owners are burdened with an unreasonable tax rate. They argue that their tax burden is neither reasonable, nor is it rationally related to public use.

Article 7, section 1 of the Washington State Constitution states in pertinent part that:

> The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only.

In *Heavens v. King Cy. Rural Library Dist.*,[16] this court distinguished the

> constitutional difference between special assessments for local improvements inuring to the benefit of specific land and general ad valorem taxes levied for the benefit of the entire taxing district. A special assessment for local improvements is not a tax within the constitutional limitations upon the amount of taxation; nor is it a tax subject to the constitutional provision requiring uniformity and equality of taxation.[17]

---

[15]*Roehl*, at 245.

[16]66 Wn.2d 558, 404 P.2d 453 (1965).

[17]*Heavens*, at 563 (citing *State ex rel. Frese v. Normandy Park*, 64 Wn.2d 411, 392 P.2d 207 (1964)).

Under this court's analysis in *Heavens*, the tax burden imposed here is a general ad valorem tax levied for the benefit of the entire Hospital District and not a tax assessed for local improvements inuring to the benefit of specific land. Thus, the tax burden is not affected by the geographical area of usage of a multi-county hospital district.

The practical impossibility of drawing the boundaries of a district created to benefit the public welfare in such a way that a uniform tax rate will result in equivalent cost/benefit ratios for all inhabitants or all property within the district is one reason courts have rejected contentions that particular legislatively created districts impose disproportionate burdens upon specific taxpayers.[18]

Appellants contend that their rights under article 1, sections 3 and 12 of the state constitution and the fourteenth amendment to the United States Constitution were violated. They claim that their equal protection rights were violated by political gerrymandering which purposefully diluted their voting strength and excluded the towns of Wilbur and Almira from the Hospital District.

■ ■ An equal protection violation exists if (1) the boundary lines are intentionally drawn to discriminate against an identifiable political group and (2) there is an actual discriminatory effect.[19] There is no factual basis for Appellants' contention that the Commissioners intentionally drew the district boundary lines to discriminate against an identifiable political group. Additionally, there is no actual discriminatory effect. Appellants contend that 95 percent of Hartline residents voted against the Hospital District and that they should have greater rights in the decision because their property constitutes 40 percent of the District's assessed value. There is no "compelling state interest in granting greater voting rights on the basis of property ownership, even if the results of [an] election will affect

---

[18]*State ex rel. Angel Fire Home & Land Owners Ass'n, Inc. v. South Cent. Colfax Cy. Special Hosp. Dist.*, 110 N.M. 496, 797 P.2d 285 (Ct. App. 1990).

[19]*Davis v. Bandemer*, 478 U.S. 109, 92 L. Ed. 2d 85, 106 S. Ct. 2797 (1986).

property taxes."[20] Neither the Hospital District nor the Grant County Commissioners could have gerrymandered the towns of Wilbur and Almira from the District. Both of those towns are in Lincoln County.

■ The purpose of the Public Hospital Districts Act is to authorize establishment of public hospital districts in order to provide hospital services and other health care services for the residents of such districts.[21] There is no requirement that hospital district boundary lines bear a rational relationship between the tax burden and the geographical area of usage.

Appellants have failed to establish an equal protection violation in this case.

## IV
### ARBITRARY AND CAPRICIOUS ACTIONS OF THE GRANT COUNTY COMMISSIONERS

■ ■ Appellants argue that the action of the Grant County Commissioners was arbitrary and capricious, although they failed to name the Commissioners as parties to this action. The words "arbitrary and capricious" have well established meaning in this state.[22] They refer to "willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action. Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous."[23] Except for clear abuse, courts will not review the discretion vested in public officers. Appellants have not

---

[20]*Seattle v. State*, 103 Wn.2d 663, 672, 694 P.2d 641 (1985).

[21]RCW 70.44.003.

[22]*Abbenhaus v. Yakima*, 89 Wn.2d 855, 858, 576 P.2d 888 (1978).

[23]*Abbenhaus*, at 858-59 (citing *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973)); *Anderson v. Island Cy.*, 81 Wn.2d 312, 501 P.2d 594 (1972); *Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972); *DuPont-Fort Lewis Sch. Dist. 7 v. Bruno*, 79 Wn.2d 736, 489 P.2d 171 (1971); *Farrell v. Seattle*, 75 Wn.2d 540, 452 P.2d 965 (1969).

established arbitrary and capricious action by any public official in this case.

Respondent requests attorneys fees under RAP 18.9(a), which states in pertinent part that:

> The appellate court on its own initiative or on motion of a party may order a party . . . who uses these rules for the purpose of delay or who fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by . . . delay or . . . failure to comply. . . .

■ Respondent asserts that it is being "forced to needlessly incur attorneys fees to defend unfounded appeals." Respondent argues merely that Appellants had "no legal or factual foundation for this costly appeal against the District and the needy people Coulee Community Hospital serves." While the lawsuit has clearly delayed the business of the Hospital District, it is arguable whether it is the kind of delay contemplated by RAP 18.9 or whether the Rules of Appellate Procedure were used for the purpose of delay. Respondent's argument on frivolousness should have been addressed to the trial court under CR 11[24] or RCW 4.84.185. This was not done. The issue was raised for the first time on appeal, citing only RAP 18.9 without reference to CR 11 or RAP 18.7. However, Respondent did not on this appeal present sufficient argument or authority for its claim of frivolousness. This court cannot upon this record grant the relief requested by Respondent. An appeal is "frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."[25]

We affirm the Grant County Superior Court in granting summary judgment to the Douglas, Grant, Lincoln and Okanogan Counties Public Hospital District Number 6 and dismissing the case with prejudice. Any further challenge to creation of Hospital District Number 6 is precluded by RCW

---

[24] CR 11 is applicable to appellate proceedings under RAP 18.7.

[25] *Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 9, 15, 665 P.2d 887 (1983) (quoting *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980)).

70.44.028. We deny the Respondent's request for attorney fees.

DORE, C.J., and UTTER, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

BRACHTENBACH and ANDERSEN, JJ., concur in the result.