# COURT OF APPEALS, STATE OF WASHINGTON, DIVISION III

| | | |
|---|---|---|
| KITTITAS COUNTY, a political Subdivision of the State of Washington, | ) ) ) ) | No. 30728-0-III |
| Appellant, | ) ) ) | |
| v. | ) ) | ORDER AMENDING OPINION |
| KITTITAS COUNTY CONSERVATION and FUTUREWISE, And ELLISON THORP PROPERTY, LLC and ELLISON THORP PROPERTY II, LLC, And EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

The Court on its own motion amends the opinion filed on August 13, 2013, as follows:

The following language, on page 4, line 2 of the opinion that reads: "The County and Ellison" appealed is deleted.

No. 30728-0-III
*Kittitas County v. Futurewise*

The reference to "The County and Ellison" will be replaced with "Futurewise" so the complete sentence on page 4, Line 2 of the opinion reads as follows:

board's decision. Futurewise appealed.

Dated: 9 / 05 / 13

KEVIN M. KORSMO
**Chief Judge**

2

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KITTITAS COUNTY, a political subdivision of the State of Washington, | ) ) ) ) | No. 30728-0-III |
| | ) | PUBLISHED OPINION |
| Appellant, | ) ) | |
| v. | ) ) | |
| KITTITAS COUNTY CONSERVATION and FUTUREWISE, And ELLISON THORP PROPERTY, LCC and ELLISON THORP PROPERTY II, LCC, And EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

BROWN, J. — Development opponents Kittitas County Conservation Coalition and

Futurewise (collectively Futurewise) ask us to reinstate a decision the Eastern

Washington Growth Management Hearings Board entered against development

proponents Kittitas County (the County), Ellison Thorp Property LLC, and Ellison Thorp

Property II LLC (collectively Ellison), but which the superior court dissolved. The hearings board invalidated the County's planning actions in amendments 10-12 and 10-13 after finding and concluding the County did not, in adopting them, comply with the Growth Management Act (GMA), chapter 36.70A RCW, or the State Environmental Policy Act (SEPA), chapter 43.21C RCW. The superior court held, and the County and Ellison now contend, the hearings board lacked subject matter jurisdiction to review the County's rezone because it is a site-specific land use decision within the superior court's exclusive jurisdiction under the Land Use Petition Act (LUPA), chapter 36.70C RCW. Additionally, the County and Ellison contend the hearings board's decision lacks substantial evidence, erroneously interprets and applies the law, and is arbitrary and capricious. We reject their contentions and reverse.

## FACTS

In June 2010, Ellison proposed two amendments to the County's comprehensive plan map and zoning map "for the purpose of developing the Thorp Travel Center consisting of a truck stop, restaurant and hotel and RV park." Administrative Record (AR) at 13, 14. The first proposal, amendment 10-12, expanded a Type 3 Limited Area of More Intensive Rural Development (LAMIRD) from 12 to 30.5 acres within the property's Agriculture Study Overlay. The second proposal, amendment 10-13, changed the property's comprehensive plan category from Rural to Commercial and changed its zone designation from Agriculture 20 to Commercial Highway.

The proposed development would cover over 29 acres, comprising a 4,000 square foot fuel station, a 10,000 square foot retail store, a 5,000 square foot retail

2

store, a 6,000 square foot restaurant, a 24,000 square foot hotel with 50 units, a 5,000 square foot recreational vehicle park with 45 spaces, and parking lots with spaces for hundreds of cars and trucks. These uses would operate 24 hours a day, employ up to 140 people, and generate $10.9 million annually. The proposed development would require new roads and a six-acre septic or sewer reserve area. Surrounding uses are mainly agricultural.

The proposed development would be located next to Interstate Highway 90. The existing LAMIRD encompasses a fuel station and retail store located across the highway from the proposed development, and an energy utility and office building located next to the proposed development. A truck stop once stood on a small portion of the existing LAMIRD located next to the proposed development.

Apparently, Ellison submitted a SEPA environmental checklist on June 10, 2010 but the County made no corresponding threshold determination. Then, the County issued a SEPA environmental checklist on October 15, 2010 and a corresponding determination of nonsignificance on November 2, 2010. The determination of nonsignificance stated, "There is no agency administrative appeal ([Kittitas County Code (KCC)] 15.04.210 and 15B.05.010)." AR at 465. Thus, Futurewise did not appeal the determination of nonsignificance to any county-level official.

On December 21, 2010, the Board of County Commissioners enacted Ordinance 2010-14, adopting Ellison's proposals along with five others during the annual comprehensive plan amendment cycle. The hearings board invalidated the County's

3

No. 30728-0-III
*Kittitas County v. Kittitas County Conservation Coal.*

planning actions upon Futurewise's appeal. The superior court dissolved the hearings

board's decision. The County and Ellison appealed.

## REVIEW STANDARD

We review the hearings board decision under the Administrative Procedure Act

(APA), chapter 34.05 RCW. *Feil v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 367,

376, 259 P.3d 227 (2011); *see* RCW 34.05.510. We apply APA standards directly to

the hearings board record, performing the same function as the superior court. *City of*

*Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 45, 959 P.2d

1091 (1998); *see* RCW 34.05.526. The party challenging the hearings board decision

(here the County and Ellison) bears the burden of proving it is invalid. RCW

34.05.570(1)(a). The decision is invalid if it suffers from at least one of nine enumerated

infirmities. RCW 34.05.570(3). We must grant relief from the decision if, as relevant

here:

> (b) The order is outside the statutory authority or jurisdiction of the
> agency conferred by any provision of law;
>
> . . . .
>
> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when
> viewed in light of the whole record . . . ; [or]
>
> . . . .
>
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3)(b), (d)-(e), (i).

Our review is de novo under RCW 34.05.570(3)(b) or (d), determining whether

the decision contains a legal error. *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*,

172 Wn.2d 144, 155, 256 P.3d 1193 (2011). We accord the hearings board's

4

interpretation of the GMA "substantial weight." *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). But the interpretation does not bind us. *City of Redmond*, 136 Wn.2d at 46.

We apply the substantial evidence review standard to challenges under RCW 34.05.570(3)(e), determining whether there exists "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *City of Redmond*, 136 Wn.2d at 46 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). We view the evidence "in the light most favorable to . . . 'the party who prevailed in the highest forum that exercised fact-finding authority.'" *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001) (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)). Doing so "'necessarily entails accept[ing] the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.'" *Id.* (quoting *Lige & Wm. B. Dickson Co.*, 65 Wn. App. at 618).

We apply the arbitrary and capricious review standard to challenges under RCW 34.05.570(3)(i), determining whether the decision constitutes "'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *City of Redmond*, 136 Wn.2d at 46-47 (quoting *Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. No. 6*, 118 Wn.2d 1, 14, 820 P.2d 497 (1991)). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *Id.* at 47 (quoting *Kendall*, 118 Wn.2d at 14).

5

ANALYSIS

A. Jurisdiction

The issue is whether the hearings board had subject matter jurisdiction to review amendment 10-13's rezone under the GMA. The County and Ellison contend the rezone is within the superior court's exclusive jurisdiction under LUPA. We review the hearings board's assertion of jurisdiction de novo. RCW 34.05.570(3)(b); *Kittitas County*, 172 Wn.2d at 155.

Certain local governments like Kittitas County must "adopt a comprehensive plan under [the GMA] and development regulations that are consistent with and implement the comprehensive plan." RCW 36.70A.040(3)(d), (4)(d), (5)(d). If a county later amends its comprehensive plan, it must concurrently adopt or amend consistent implementing development regulations. WAC 365-196-805(1). A comprehensive plan is a county's "generalized coordinated land use policy statement." RCW 36.70A.030(4). Development regulations are a county's "controls placed on development or land use activities . . . , including . . . zoning ordinances." RCW 36.70A.030(7). But a "decision to approve a project permit application" is not a development regulation, even if it appears in a legislative ordinance or resolution. *Id.* Instead, a project permit approval is a "land use decision" under LUPA. RCW 36.70C.020(2)(a). Project permit applications include proposals for "site-specific rezones authorized by a comprehensive plan" but exclude proposals for "the adoption or amendment of a comprehensive plan . . . or development regulations." RCW 36.70B.020(4).

6

The hearings board has exclusive jurisdiction to review petitions alleging a county did not comply with the GMA in adopting or amending its comprehensive plan or development regulations.[1] RCW 36.70A.280(1)(a); former RCW 36.70A.290(2) (1995); *Somers v. Snohomish County*, 105 Wn. App. 937, 945, 21 P.3d 1165 (2001). Additionally, the hearings board may review petitions alleging a county did not comply with SEPA in adopting or amending its comprehensive plan or development regulations. RCW 36.70A.280(1)(a); former RCW 36.70A.290(2). But the hearings board "do[es] not have jurisdiction to decide challenges to site-specific land use decisions because [those] decisions do not qualify as comprehensive plans or development regulations." *Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007); *see* RCW 36.70A.030(4), (7); RCW 36.70B.020(4); RCW 36.70C.020(2)(a). Instead, the superior court has exclusive jurisdiction under LUPA to review site-specific land use decisions not subject to review by quasi-judicial agencies like the hearings board. RCW 36.70C.030(1)(a)(ii); *Woods*, 162 Wn.2d at 610.

Here, whether the hearings board had subject matter jurisdiction to review amendment 10-13's rezone depends on whether it is an amendment to a development regulation under the GMA or a project permit approval under LUPA. *Woods*, 162 Wn.2d at 610; *see* RCW 36.70A.030(7); RCW 36.70B.020(4). The parties agree the rezone was site specific. *See Woods*, 162 Wn.2d at 611 n.7 (stating a site-specific rezone is a change in the zone designation of a "'specific tract'" at the request of "'specific parties.'"

---

[1] The Eastern Washington Growth Management Hearings Board has jurisdiction over such petitions arising from counties "east of the crest of the Cascade Mountains," including Kittitas County. RCW 36.70A.260(1)(b).

(quoting *Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981))). But the parties dispute whether the rezone was or needed to be "authorized by a comprehensive plan." RCW 36.70B.020(4).

First, the County and Ellison argue the rezone was a project permit approval regardless of whether the comprehensive plan authorized it. They reason RCW 36.70B.020(4) contains a nonexclusive list of project permit approvals including all site-specific rezones without restriction. But the County and Ellison ignore express limitations on the items listed. *See In re Parentage of J.M.K.*, 155 Wn.2d 374, 393, 119 P.3d 840 (2005) (stating a court must not "simply ignore" express terms when interpreting a statute); *State ex rel. Baisden v. Preston*, 151 Wash. 175, 177, 275 P. 81 (1929) (stating a court must interpret a statute as a whole so that, if possible, "'no clause, sentence, or word shall be superfluous, void, or insignificant'" (quoting *Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16, 25 L. Ed. 782 (1879))); *Murray v. Dep't of Labor & Indus.*, 151 Wash. 95, 102, 275 P. 66 (1929) (a court must, if possible, interpret a statute so as to give every word or phrase "meaning" as well as "significance and effect" (internal quotation marks omitted)). Under RCW 36.70B.020(4), a site-specific rezone is a project permit approval solely if "authorized by a comprehensive plan"; otherwise, it is "the adoption or amendment of a . . . development regulation[]." We must interpret this language so as to give it meaning, significance, and effect.

Second, the County and Ellison argue the comprehensive plan authorized the rezone because the County found the rezone met all necessary criteria, including compatibility with the comprehensive plan. They reason the County ensured such

compatibility by changing the property's comprehensive plan category from Rural to Commercial "as a precondition to" changing its zone designation from Agriculture 20 to Commercial Highway. Br. of Resp't Kittitas County at 24. But the County accomplished each act concurrently by approving amendment 10-13. And, to be "authorized by a comprehensive plan" within the meaning of RCW 36.70B.020(4), the rezone had to be "allowed by an *existing* comprehensive plan." *Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 160 Wn. App. 274, 281-83, 250 P.3d 1050 (emphasis added), *review denied*, 171 Wn.2d 1034 (2011); *see also Woods*, 162 Wn.2d at 612 n.7, 613; *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 179-80, 4 P.3d 123 (2000).

The County and Ellison acknowledge the Rural comprehensive plan category existing before amendment 10-13 did not allow the rezone to Commercial Highway. And, the Commercial comprehensive plan category existing after amendment 10-13 was not part of the existing comprehensive plan at the time of the rezone. Thus, the rezone is not a project permit approval under LUPA because the then-existing comprehensive plan did not authorize it. Instead the rezone is an amendment to a development regulation under the GMA because it implements the comprehensive plan amendment. The hearings board's decision is within its statutory authority. *See* RCW 34.05.570(3)(b).

Dictum in *Coffey v. City of Walla Walla*, 145 Wn. App. 435, 187 P.3d 272 (2008), does not require a different conclusion. There, the city amended its comprehensive plan but did not rezone the property. *Id.* at 438. The *Coffey* court held the superior

9

court lacked subject matter jurisdiction to review the comprehensive plan amendment under LUPA because the hearings board had exclusive jurisdiction to do so under the GMA. *Id.* at 441. The *Coffey* court continued,

> It is not uncommon for those hoping to develop property to seek both a comprehensive plan amendment and a rezone of property in the same proceeding. Anyone seeking to challenge both aspects of a ruling granting both requests would by statute have to appeal to two entities: the [hearings board] for the comprehensive plan amendment and superior court for the rezone.

*Id.* at 442. This statement was unnecessary to the *Coffey* court's holding because the city amended its comprehensive plan but did not rezone the property. Additionally, this statement is true solely if a rezone is site specific and authorized by a then-existing comprehensive plan. In making this statement, the *Coffey* court did not consider whether a rezone that implements a comprehensive plan amendment can be an amendment to a development regulation.

Considering all, we hold a site-specific rezone is a project permit approval under LUPA if it is authorized by a then-existing comprehensive plan and, by contrast, is an amendment to a development regulation under the GMA if it implements a comprehensive plan amendment. In sum, the superior court erred because the hearings board had subject matter jurisdiction to review amendment 10-13's rezone for compliance with both the GMA and SEPA. *See* RCW 36.70A.280(1)(a); former RCW 36.70A.290(2).

10

### B. Exhaustion of Administrative Remedies

Ellison contends Futurewise failed to exhaust an available administrative remedy because it did not appeal the County's SEPA determination of nonsignificance to the county commissioners before petitioning the hearings board. Whether a party must exhaust an available administrative remedy is a legal issue we review de novo. *See Evergreen Wash. Healthcare Frontier, LLC v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 431, 445, 287 P.3d 40 (2012) (citing *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 19 n.10, 829 P.2d 765 (1992)).

A party aggrieved by a county's SEPA action must use any available administrative appeal before petitioning the superior court for judicial review. RCW 43.21C.075(4); WAC 197-11-680(3)(c); *Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 26, 785 P.2d 447 (1990); *see also* RCW 34.05.534; *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 866, 947 P.2d 1208 (1997). But this requirement does not apply to Futurewise because it did not petition the superior court for judicial review; the County and Ellison did. And, the GMA's standing and jurisdictional requirements allowed Futurewise to petition the hearings board directly for administrative review. *See* RCW 36.70A.280(1)(a), (2), (4); former RCW 36.70A.290(2); RCW 34.05.530. Even if Futurewise were required to use some other administrative appeal before petitioning the hearings board, the procedure the County and Ellison suggest was not available to Futurewise.

While a party may appeal the County's SEPA action to the county commissioners, this procedure applies solely if the action relates to the County's

11

decision on a "land use permit[]"—a project permit application. KCC 15A.01.030; *see* KCC 15A.02.050(1); KCC 15A.04.020(2); KCC 15A.10.020. But a party may appeal the County's SEPA action to the hearings board directly if the action relates to the County's "amendments to the . . . comprehensive plan or development regulations." KCC 15B.05.010; *see* KCC 15.04.210(1)(b). Because amendments 10-12 and 10-13 are not decisions on land use permits but amendments to the comprehensive plan and development regulations, Futurewise could not appeal the determination of nonsignificance to the county commissioners. Indeed, the determination of nonsignificance recognizes this, stating, "There is no agency administrative appeal (KCC 15.04.210 and 15B.05.010)." AR at 465. In sum, Futurewise was not required to appeal the County's SEPA determination of nonsignificance to the county commissioners before petitioning the hearings board.

### C. Verities and Abandoned Issues Noted

Because the County and Ellison bear the burden of proving the hearings board decision is invalid, *see* RCW 34.05.570(1)(a), their briefs to this court had to "set forth a separate concise statement of each error which [they] contend[] was made by the [hearings board], together with the issues pertaining to each assignment of error," RAP 10.3(h); *see* 3 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 10.3 drafters' cmt. 1994 amends. at 54 (7th ed. 2011) (stating RAP 10.3(h) applies to "[a] party contending that the administrative agency decision was in error, regardless of the party's designation as 'appellant' or 'respondent'" before the appellate court).

12

This required their briefs to include "[a] separate assignment of error for each finding of fact [they] contend[] was improperly made," and to do so "with reference to the finding by number." RAP 10.3(g); *see* RAP 10.3(h). Unchallenged agency factual findings are verities on appeal. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995). Additionally, their briefs had to present "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6); *see* RAP 10.3(b). Unsubstantiated assignments of error are deemed abandoned. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991).

The County and Ellison's briefs to this court do not assign error to or argue against the hearings board's factual findings. Therefore, the factual findings are verities on appeal. *See* RAP 10.3(g)-(h); *Hilltop Terrace*, 126 Wn.2d at 30. Additionally, the County and Ellison's briefs to this court assign error to but do not argue against the merits of the hearings board's decision on SEPA noncompliance.[2] Therefore, these assignments of error are abandoned. *See* RAP 10.3(a)(6), (b); *Howell*, 117 Wn.2d at 624. Notably, the County and Ellison did not raise the above issues in their petitions to the superior court either. In sum, we review solely the hearings board's legal conclusions on GMA noncompliance.[3]

---

[2] While the County and Ellison baldly assert the environmental checklists and determination of nonsignificance were adequate under SEPA, they do not substantiate this argument.

[3] But when addressing Ellison's challenges under RCW 34.05.570(3)(d) and (e), we still consider the hearings board's factual findings to determine whether they support the hearings board's legal conclusions. *See generally Morgan v. Prudential Ins. Co. of*

13

D. Hearings Board Decisions

The issue is whether the hearings board erred by invalidating amendments 10-12 and 10-13. Ellison contends the hearings board erroneously decided amendment 10-12's expansion of the Type 3 LAMIRD is noncompliant with the GMA's requirements and is inconsistent with the comprehensive plan's goals, policies, and objectives. Next, Ellison contends the hearings board erroneously decided amendment 10-13's rezone is inconsistent with the comprehensive plan's prior designation of an Agriculture Study Overlay. We review the hearings board's decision to ensure it is supported by substantial evidence in light of the whole record, does not erroneously interpret or apply the law, and is not arbitrary or capricious. RCW 34.05.570(3)(d)-(e), (i); *Kittitas County*, 172 Wn.2d at 155; *City of Redmond*, 136 Wn.2d at 46-47.

The hearings board may decide a petition alleging a county did not comply with the GMA in adopting or amending its comprehensive plan or development regulations. RCW 36.70A.280(1)(a); former RCW 36.70A.290(2). The petitioner (here Futurewise) bears the burden of proving noncompliance. *See* RCW 36.70A.320(2). But a county has "broad discretion in adapting the requirements of the GMA to local realities." *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224, 236, 110 P.3d 1132 (2005); *see* RCW 36.70A.3201. Thus, the hearings board must presume validity and find compliance unless the county's planning action is "clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]." RCW 36.70A.320(1), (3). A county's planning action is

---

*Am.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976) (stating the review standard applicable

clearly erroneous if it leaves the hearings board with a "'firm and definite conviction that a mistake has been committed.'" *King County*, 142 Wn.2d at 552 (quoting *Dep't of Ecology v. Pub. Util. Dist. No. 1*, 121 Wn.2d 179, 201, 849 P.2d 646 (1993)).

A comprehensive plan amendment must "conform to [the GMA]." RCW 36.70A.130(1)(d). But "the GMA is not to be liberally construed." *Woods*, 162 Wn.2d at 612 & n.8, 614 (citing *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 565, 958 P.2d 962 (1998)). Thus, a comprehensive plan must obey the GMA's clear mandates. *See Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341-42, 190 P.3d 38 (2008). A newly adopted or amended development regulation must be "consistent with and implement the comprehensive plan." RCW 36.70A.040(3)(d), (4)(d), (5)(d); RCW 36.70A.130(1)(d); *see* WAC 365-196-805(1). But "a comprehensive plan is a 'guide' or 'blueprint' to be used when making land use decisions." *Citizens for Mount Vernon*, 133 Wn.2d at 873 (quoting *Barrie v. Kitsap County*, 93 Wn.2d 843, 849, 613 P.2d 1148 (1980)). Thus, a development regulation need not strictly adhere but must "generally conform" to the comprehensive plan. *Id.* (quoting *Barrie*, 93 Wn.2d at 849).

A county's comprehensive plan must contain "a rural element including lands that are not designated for urban growth." RCW 36.70A.070(5)(d); *see* WAC 365-196-425. This rural element "may allow for limited areas of more intensive rural development, including necessary public facilities and public services." RCW 36.70A.070(5)(d); *see* WAC 365-196-425(6). Type 3 LAMIRDs allow "intensification of . . . isolated small-scale

---

to factual findings and legal conclusions entered after a bench trial).

businesses that are not principally designed to serve the existing and projected rural population and nonresidential uses, but do provide job opportunities for rural residents." RCW 36.70A.070(5)(d)(iii); *see* WAC 365-196-425(6)(c)(iii). Under these area types, "Rural counties may allow the expansion of small-scale businesses [or] . . . new small-scale businesses to utilize a site previously occupied by an existing business." RCW 36.70A.070(5)(d)(iii); *see* WAC 365-196-425(6)(c)(iii)(A). But such small-scale businesses must "conform[] to the rural character of the area." RCW 36.70A.070(5)(d)(iii); *see* WAC 365-196-425(6)(c)(iii)(A).

The County's rural element allows for Type 3 LAMIRDs, calling them "Rural Employment Center[s]—Intensification of development on lots containing isolated nonresidential uses or new development of isolated small-scale businesses that are not principally designed to serve the rural area, but do provide job opportunities for rural residents." KITTITAS COUNTY COMPREHENSIVE PLAN (KCCP) 8.5.8. These area types must meet certain standards:

> a) Intensification of development on lots containing isolated nonresidential uses or new development of isolated small scale businesses is permitted;
> b) Businesses should provide job opportunities for rural residents, but do not need to be principally designed to serve local residents;
> c) Small scale employment uses should generally be appropriate in a rural community, such as (but not limited to) independent contracting services, incubator facilities, home-based industries, and services which support agriculture; and
> d) Development should conform to the rural character of the surrounding area.

KCCP Goal, Policy, & Objective 8.78. Once the County fixes an area's boundaries, it may not expand them unless doing so is "otherwise consistent with the requirements of

16

the GMA." KCCP Goal, Policy, & Objective 8.69. Such expansion, where permitted, may include "undeveloped land . . . for limited infill, development or redevelopment when consistent with rural provisions of the [GMA]." KCCP Goal, Policy, & Objective 8.70. However, "uses that require urban level of services should not be allowed." KCCP Goal, Policy, & Objective 8.73. Urban services are "public services and public facilities at an intensity historically and typically provided in cities, specifically including storm and sanitary sewer systems." RCW 36.70A.030(18); WAC 365-196-200(19).

We begin our analysis with amendment 10-12. First, Ellison argues the hearings board erred in deciding the travel center would not be "isolated" as required by RCW 36.70A.070(5)(d)(iii) and KCCP 8.5.8(a). The hearings board defined "isolated" according to *Whitaker v. Grant County*, No. 99-1-0019, at 13-14 (E. Wash. Growth Mgmt. Hr'gs Bd. Nov. 1, 2004), which decided proposed developments on contiguous Type 3 LAMIRDs would not be isolated but would permit low-density sprawl. Thus, the hearings board concluded the proposed development must stand apart from other similar uses. Giving this GMA interpretation substantial weight, we reject Ellison's argument because the undisputed facts show a fuel station and retail store exist on the Type 3 LAMIRD across the highway from the proposed development. This is a sufficient quantity of evidence to persuade a fair-minded person the travel center would not be isolated from other similar uses. In reaching this decision, the hearings board correctly interpreted and applied the law upon thorough reasoning with due consideration for the facts.

17

Second, Ellison argues the hearings board erred in deciding the travel center would not be "small scale" as required by RCW 36.70A.070(5)(d)(iii) and KCCP 8.5.8(a) and (c). The hearings board defined "small scale" according to state and local standards for Type 3 LAMIRDs, which require proposed developments to be appropriate for and visually compatible with a rural community. Thus, the hearings board concluded the proposed development must be small relative to surrounding uses. Giving this GMA interpretation substantial weight, we reject Ellison's argument because the undisputed facts detailed below support the hearings board's decision.

The facts show while surrounding uses are mainly agricultural, the proposed development would cover over 29 acres, comprising a 4,000 square foot fuel station, a 10,000 square foot retail store, a 5,000 square foot retail store, a 6,000 square foot restaurant, a 24,000 square foot hotel with 50 units, a 5,000 square foot recreational vehicle park with 45 spaces, and parking lots with spaces for hundreds of cars and trucks. These uses would operate 24 hours a day, employ up to 140 people, and generate $10.9 million annually. Additionally, the proposed development would require significant infrastructure, including roads from the highway and a six-acre septic or sewer reserve area the hearings board concluded was an urban service. This is a sufficient quantity of evidence to persuade a fair-minded person the travel center would not be small in scale relative to surrounding uses. In reaching this decision, the hearings board again correctly interpreted and applied the law upon thorough reasoning with due consideration for the facts.

18

Third, Ellison argues the travel center would conform to the surrounding area's rural character as required by RCW 36.70A.070(5)(d)(iii) and KCCP 8.5.8(d). But the hearings board never reached this issue, instead noting no evidence showed the county commissioners ever considered it. We will not exercise discretion the legislature placed in the hearings board. *See* RCW 34.05.574(1); RCW 36.70A.280(1)(a); former RCW 36.70A.290(2).

To summarize, the hearings board correctly decided the travel center would not be isolated or small in scale. Therefore, we conclude the hearings board did not err in deciding amendment 10-12 is noncompliant with the GMA and inconsistent with the comprehensive plan. We do not reach Ellison's remaining arguments on whether the expansion properly utilized a former truck stop site not included in the original Type 3 LAMIRD and whether the expansion fixed more logical outer boundaries than the original Type 3 LAMIRD.

We turn now to amendment 10-13. On December 22, 2009, the County designated an Agriculture Study Overlay applicable to "[p]roperties containing prime farmland soils, . . . and located in the former Thorp Urban Growth Node Boundaries and outside of LAMIRD boundaries." AR at 506. Amendment 10-13 changed the property's comprehensive plan category from Rural to Commercial and changed its zone designation from Agriculture 20 to Commercial Highway.

First, Ellison argues the hearings board erred in deciding an inconsistency exists because the record does not reveal the County's intent in designating the property as an Agriculture Study Overlay. But the undisputed facts show the County did so

19

because it intended to preclude commercial development until it determined whether the property qualified as Agricultural Lands of Long Term Commercial Significance:

> "Outside of the LAMIRD boundaries, some parcels have been identified as meeting some though not all designation criteria for lands of long-term commercial significance for agriculture. An overlay zone is proposed to limit the potential for lot creation and some potentially incompatible land uses until the County completes a review of the needs of industry in 2010". . . . "The County intends to study the needs and nature of the . . . agriculture industries and the designation criteria in conjunction with its consideration of its critical areas regulations update in 2010. In the interim, an agriculture . . . study overlay zone were [sic] considered in these areas; and standards proposed in Kittitas County Code Title 17 that would be applied to the overlay zones."

AR at 601 (second and third omissions in original) (quoting Kittitas County Ordinance 2009-025 (Dec. 22, 2009) (Findings of Fact 128, 171)). The County apparently had not made this determination at the time of the rezone.

Second, Ellison argues the hearings board erred in deciding the property might have qualified as Agricultural Lands of Long Term Commercial Significance because doing so improperly entertained a collateral attack on the County's prior designation. But the hearings board merely concluded the rezone is inconsistent with the Agriculture Study Overlay's interim use limitations, which remained in effect at the time of the rezone. Indeed, the undisputed facts show the Commercial Highway zone designation permitted commercial development that the Agriculture Study Overlay prohibited. This is a sufficient quantity of evidence to persuade a fair-minded person amendment 10-13's rezone is inconsistent with the comprehensive plan's prior designation of an Agriculture Study Overlay. In reaching this decision, the hearings board again correctly interpreted and applied the law upon thorough reasoning with due consideration for the

facts. Therefore, we conclude the hearings board did not err in deciding amendment 10-13 is inconsistent with the comprehensive plan.

In conclusion, the hearings board's decision is supported by substantial evidence in light of the whole record, does not erroneously interpret or apply the law, and is not arbitrary or capricious. *See* RCW 34.05.570(3)(d)-(e), (i). We hold the hearings board did not err by invalidating amendments 10-12 and 10-13 on grounds the County did not comply with the GMA in adopting them. Accordingly, we reverse the superior court. We do not reach Futurewise's remaining contentions on whether the superior court erred in dissolving rather than remanding the hearings board's decision.

Reversed.

Brown, J.

WE CONCUR:

Siddoway, A.C.J.

Kulik, J.

21