# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2017 JUN 19 AM 10:28

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | |
|---|---|
| KIRK WILLIAMS, | ) |
| | ) No. 73766-0-I |
| Appellant, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) |
| CLAUDIA BALDUCCI, DIRECTOR, KING | ) UNPUBLISHED OPINION |
| COUNTY DEPT. OF ADULT & JUVENILE | ) |
| DETENTION FACILITY; BENJAMIN | ) |
| SANDERS, KING COUNTY MEDICAL | ) |
| DIRECTOR, MANAGER, SUPT, SUED IN | ) |
| THEIR INDIVIDUAL AND OFFICIAL | ) |
| CAPACITY, | ) |
| | ) |
| Respondents. | ) FILED: June 19, 2017 |
| | ) |

SPEARMAN, J. – Kirk Williams sued employees of the King County Correctional Facility (the jail) under 42 U.S.C. § 1983, alleging they were deliberately indifferent to his serious medical needs. But Williams made no showing that the defendants knew of and disregarded an excessive risk to his health and safety or that they made any intentional decisions regarding the conditions of his confinement at the jail. Accordingly, the trial court properly dismissed his claims on summary judgment. We affirm.

## FACTS

Williams sued Dr. Benjamin Sanders and Claudia Balducci, alleging they violated his constitutional right to adequate medical care while he was a pretrial

detainee in the jail from June 2010 until September 2011. Williams claimed that as a result of the defendants' negligence, he contracted tuberculosis in the jail from "illegal immigrants" who "were not properly screened" for communicable diseases. Clerk's Papers (CP) at 2. Williams tested positive for tuberculosis when he was later transferred to prison.

Dr. Sanders is the Medical Director of Jail Health Services at the jail, and Balducci was director of the Department of Adult and Juvenile Detention. Williams does not allege that he had any interaction with either defendant.

Williams attached supporting declarations to his complaint from two fellow inmates. David James stated that he was exposed to tuberculosis while housed in the jail from 1994 to 1995. Jason Boothby stated that he was booked into the jail on January 27, 2011, and was housed in the cell next to Williams. Boothby claimed he told a medical nurse he had tuberculosis but was never tested. Boothby concluded that he "could [have] spread tuberculosis to Mr. Williams." CP at 18.

On May 29, 2015, Dr. Sanders and Balducci moved for summary judgment, arguing there was no evidence they knew of or disregarded a serious risk to Williams' health. They also maintained they were entitled to qualified immunity.

In his supporting declaration, Dr. Sanders stated that he reviewed Williams' health records for the period of his incarceration in the jail from June

12, 2010 to September 13, 2011. He did not personally examine or treat Williams, although he did participate in Williams' diabetes diagnosis.

According to Dr. Sanders, inmates booked into the jail are given a tuberculosis skin test if they are foreign-born. But all inmates are offered a tuberculosis skin test during the health assessment, which occurs within 14 days of booking, and any inmate can receive a skin test on request.

Williams' receiving screening form noted that there were no indications or risk factors requiring a tuberculosis skin test, and Williams did not request a test at the 14-day health assessment. Nor was there any record that Williams ever submitted a kite requesting a skin test or expressing concerns about the conditions in the jail or the quality of his medical care.

Dr. Sanders acknowledged that the Department of Corrections (DOC) tests all incoming inmates for tuberculosis. He noted, however, that the longer period of incarceration for DOC inmates generally permits the treatment for latent tuberculosis, which takes six to nine months, to be successfully completed. Dr. Sanders explained that the majority of pretrial detainees spend a shorter time in the jail and that it would be inappropriate to start the treatment for latent tuberculosis if it cannot be completed. Had Williams shown symptoms of active tuberculosis while in jail, he would have been isolated in a specialized cell for diagnosis and treatment.

Based upon his review, Dr. Sanders concluded that the jail medical staff followed all applicable protocols for Williams' medical care while in jail.

> The fact that Mr. Williams, an inmate who had no risk factors for tuberculosis and never requested a tuberculosis skin test, was not given a tuberculosis skin test met the appropriate standard of care and did not result in a disregard or indifference to his medical needs.

CP at 114.

In her affidavit, Balducci stated that she had never provided any medical treatment to Williams or participated in any medical or housing decision. Balducci noted that contrary to Williams' assertion, jail records showed he had never been housed on the ninth floor of the jail.

The trial court denied summary judgment, and Dr. Sanders and Balducci moved for reconsideration. After considering all of the materials, including the additional evidence that Williams submitted, the trial court granted the motion and entered summary judgment in favor of Dr. Sanders and Balducci. The court concluded that Williams failed to present any evidence to support an inference that the defendants knew of a serious risk of harm and were deliberately indifferent to that risk.

Williams appeals.

## DISCUSSION

### Standard of Review

When reviewing a grant of summary judgment, an appellate court undertakes the same inquiry as the trial court. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.

<u>Christensen v. Grant County Hosp. Dist. No. 1</u>, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); <u>Keck v. Collins</u>, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

The moving party can satisfy its initial burden under CR 56 by demonstrating the absence of evidence to support the nonmoving party's case. <u>Young v. Key Pharms., Inc.</u>, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue for trial. <u>Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. No. 6</u>, 118 Wn.2d 1, 8-9, 820 P.2d 497 (1991). To defeat a properly supported motion for summary judgment, the nonmoving party may not rely on the allegations in the pleadings,

> but must set forth specific facts by affidavit or otherwise that show a genuine issue exists. Additionally, any such affidavit must be based on personal knowledge admissible at trial and not merely on conclusory allegations, speculative statements or argumentative assertions.

<u>Las v. Yellow Front Stores, Inc.</u>, 66 Wn. App. 196, 198, 831 P.2d 744 (1992) (citation omitted).

In order to maintain a cause of action under 42 U.S.C. § 1983, Williams must show, among other things, that (1) the defendants violated a federal constitutional or statutory right, and (2) the defendants acted under color of state

law. See Sintra, Inc. v. City of Seattle, 119 Wn.2d 1, 11, 829 P.2d 765 (1992) (citing Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Williams asserts that Dr. Sanders and Balducci were deliberately indifferent to his risk of serious harm and therefore violated his rights under the Eighth and Fourteenth Amendments.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To establish an Eighth Amendment claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle, 429 U.S. at 106. An inadvertent failure to provide adequate medical care does not violate the Eighth Amendment. Estelle, 429 U.S. at 105-06.

Because the Eighth Amendment applies only after conviction, courts have generally applied a similar deliberate indifference standard under the Fourteenth Amendment to analogous claims by pretrial detainees. See Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). A jail official acts with deliberate indifference only if he or she "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Under this subjective standard, the official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id.

Relying on a United States Supreme Court decision, the Ninth Circuit has recently adopted a more objective approach to the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim.

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016), cert. denied, 137 S. Ct. 831, 197 L. Ed. 2d 67 (2017) (applying an objective standard under the Fourteenth Amendment to a failure to protect claim arising from an inmate beating); see also Kingsley v. Hendrickson, ___ U.S.___,135 S. Ct. 2466, 2470, 192 L. Ed. 2d 416 (2015) (applying objective standard to a pretrial detainee's claim for excessive force).

Williams fails to establish a triable issue under either standard.

Dr. Sanders never examined or treated Williams while he was incarcerated in the jail. Williams' medical records revealed no indications or risk factors suggesting the need to perform a tuberculosis skin test. Nor did he exhibit any signs of active tuberculosis. Williams never complained about the quality of his medical care or expressed concerns about the health or condition of other inmates in the jail.

Balducci had no contact with Williams while he was at the jail and did not participate in any medical or housing decisions involving Williams. Nothing in the record suggests that either Dr. Sanders or Balducci made any intentional decisions regarding the conditions of Williams' confinement or that they directed or supervised any subordinates who may have violated Williams' constitutional rights.

The declarations that Williams submitted provided no support for his conclusory allegations of deliberate indifference. David James stated that he was exposed to tuberculosis while housed in the jail. But James was in the jail more than 15 years before Williams and long before either Dr. Sanders or Balducci began working at the jail. Jason Boothby speculated he might have been the source of Williams' tuberculosis while he was housed at the jail in 2011 and claimed he was never tested. But Boothby provided no details about any risk factors or symptoms that would have prompted testing. Nor did he identify any contact with Dr. Sanders or Balducci or suggest they had any involvement with his medical treatment or housing location.

In response to the defendants' motion for reconsideration, Williams submitted two declarations from inmates Fausto Filio and Alberto Soliz, who had been incarcerated in the jail during 2010 and 2011. Both inmates stated they were never tested for tuberculosis, even though they were foreign born. But neither inmate claimed he had tuberculosis. Nor did either inmate refer to Dr. Sanders or Balducci or allege having any interaction with them.

Viewed in the light most favorable to Williams, the materials before the trial court failed to support the slightest inference that Dr. Sanders or Balducci knew of and disregarded a risk to Williams' health and safety or that they made any intentional decision regarding the conditions under which he was confined. The court properly entered summary judgment.[1]

Williams has appended various materials to his opening brief that were not part of the record before the trial court. We therefore decline to consider them. See RAP 9.12 (appellate review of an order granting summary judgment is limited to those materials properly before the trial court); see also RAP 10.3(8) (appendix to appellate brief may not contain materials not in the record on review without permission for the appellate court). Contrary to Williams' assertions in his reply brief, the materials do not satisfy the strict criteria for additional evidence on review under RAP 9.11.

Affirmed.

WE CONCUR:

_Spearman, J._

_Mann, J_

_Schindell, J_

---

[1] Because the trial court properly entered summary judgment on Williams' deliberate indifference claim, we need not address whether Dr. Sanders and Balducci were also entitled to qualified immunity.