IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

RON FODE,                                             )
                                                      )          No.  40449-8-III
                    Appellant,                        )
                                                      )
         v.                                           )
                                                      )
STATE OF WASHINGTON,                                  )          UNPUBLISHED OPINION
DEPARTMENT OF ECOLOGY, AND                            )
THE ENVIRONMENTAL AND LAND                            )
USE HEARING OFFICE,                                   )
                                                      )
                    Respondents.                      )
_____                )
RON FODE,                                             )
                                                      )
                    Appellant,                        )
                                                      )
         v.                                           )
                                                      )
WASHINGTON STATE DEPARTMENT                            )
OF ECOLOGY,                                           )
                                                      )
                    Respondent.                       )
                                                      )
_____                )

No. 40449-8-III
*Fode v. Dep't of Ecology*

|  |  |
|---|---|
| WASHINGTON DEPARTMENT OF ECOLOGY, | ) ) ) ) |
| Appellant, | ) ) |
| v. | ) ) |
| RON FODE; WASHINGTON STATE POLLUTION CONTROL HEARINGS BOARD, | ) ) ) ) ) |
| Respondent. | ) ) |

COONEY, J. — Ron Fode was issued monetary penalties by the Department of Ecology (Ecology) for irrigating his crops without a water right. He appealed the penalties to the Pollution Control Hearings Board (PCHB), which affirmed the lawfulness of the penalties but reduced the amount from what Ecology had issued. Both Ecology and Mr. Fode appeal.

On appeal, Mr. Fode argues: (1) he was not provided adequate technical assistance before the issuance of fines; (2) Ecology's office deadline for water rights transfers violated the Administrative Procedure Act rulemaking requirements and was arbitrary and capricious; (3) Ecology is not statutorily permitted to assess separate fines based on property ownership; and (4) the PCHB misapplied evidentiary standards and erroneously found the fines were reasonable. Ecology argues in its cross appeal that the PCHB erred in reducing the fines. We disagree with both Mr. Fode's and Ecology's arguments and affirm.

BACKGROUND

Ecology is responsible for the "supervision of public waters within the state and their appropriation, diversion, and use" including groundwater. RCW 43.21A.064(1); RCW 90.44.040. RCW 90.44.050 mandates that "no withdrawal of public groundwaters of the state shall be begun . . . unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided," subject to some exceptions. RCW 90.03.380 authorizes changes to the point of diversion, place of use, or purpose of use of water rights under certain circumstances. RCW 90.44.100 allows changes to groundwater rights. Moreover, RCW 90.03.390 allows temporary or "seasonal" changes to the "place of use of water" with the "permission of the water master of the district in which such a proposed change is located." Relevant here, the "Odessa Groundwater Management Subarea" of the state has "experienced a steady decline in groundwater levels" since 1967 and is therefore of particular concern. WAC 173-128A-020.

Mr. Fode is a longtime farmer in Grant County, Washington, specifically the Odessa Groundwater Management Subarea. Mr. Fode owns some of the parcels he farms and leases the others. At issue in this appeal are three parcels (collectively "the Wheeler Property") consisting of a parcel owned by Mr. Fode (Fode Parcel), a parcel owned by Michele Kiesz (Kiesz Parcel) and leased by Mr. Fode, and a parcel owned by Ronald Sparks, as representative of the Schmidt Estate (Sparks Parcel), and leased by Mr. Fode. "The Kiesz

3

Parcel is comprised of land irrigated by Pivots[1] 1, 2, 3, and the east half of Pivot 4. The

Sparks Parcel is comprised of land irrigated by the west half of Pivot 4. The Fode parcel is

comprised of land irrigated by Pivot 5." Clerk's Papers (CP) at 2228. Additionally, Ms.

Kiesz owns land known as the "Schrag Property"[2] that Mr. Fode also leases from her.

Ms. Kiesz holds a groundwater right that authorizes irrigation of 80 of the Kiesz

Parcel's 415 acres. The Fode Parcel and the Sparks Parcel do not have water rights

authorizing groundwater irrigation. Mr. Fode possesses a groundwater right, G3-22345C,

that authorizes irrigation of other lands he owns. He was granted seasonal changes to this

water right's place of use between 2001 and 2009. Generally, these seasonal changes

authorized irrigation of different portions of the Kiesz, Sparks, or Fode Parcels.

Mr. Fode submitted an application to Ecology in January 2017 for a seasonal change

to the place of use for groundwater right G3-22345C in order to authorize irrigation of the

Fode Parcel. Ecology denied his application because the place of use for the relevant

portion of the water right he sought to change was irrigated by surface water from the

federal Columbia Basin project, resulting in the groundwater right becoming an

---

[1] "Pivots" are the sprinklers that irrigate each field. *See* Clerk's Papers at 396.

[2] Mr. Fode testified that he did not irrigate the Schrag Property in 2017 so he could transfer the water right associated with it to the Wheeler Property. Additional facts relevant to this issue are included in the analysis below.

4

unavailable reserve right. RCW 90.44.510.[3] Ecology informed Mr. Fode in February that his application was denied and instructed him to refrain from irrigating the Kiesz and Sparks Parcels.

Shortly thereafter, Mr. Fode and Ms. Kiesz discussed transferring a water right from the Schrag Property to the Wheeler Property. Ms. Kiesz scheduled a meeting with Kevin Brown, Ecology's Columbia Basin Watermaster, to discuss transfering water rights for the 2017 irrigation season. Ms. Kiesz would later testify that Mr. Brown informed her it was past the February 15 deadline for seasonal change applications. Mr. Brown testified that in addition to the late request, Ms. Kiesz stated at the meeting that she did not want to transfer any water rights to the Wheeler Property. After this meeting, Mr. Brown called Mr. Fode and instructed him not to irrigate "his property or the Kiesz parcel." CP at 2239. Neither Ms. Kiesz nor Mr. Fode submitted an application for a seasonal change of water rights associated with the Schrag Property for the 2017 growing season.

---

[3] "The department shall issue a superseding water right permit or certificate for a groundwater right where the source of water is an aquifer for which the department adopts rules establishing a groundwater management subarea and water from the federal Columbia Basin project is delivered for use by a person who holds such a groundwater right. The superseding water right permit or certificate shall designate that portion of the groundwater right that is replaced by water from the federal Columbia Basin project as a standby or reserve right that may be used when water delivered by the federal project is curtailed or otherwise not available."

Mr. Brown traveled to the Wheeler Property in May and observed irrigation as well as planted potatoes, growing crops, and harvested hay. On May 16, 2017, Mr. Brown mailed letters to Ms. Kiesz and Mr. Sparks stating it appeared their parcels had been irrigated and requesting information about water rights Ecology may have "overlooked." CP at 1083. Ms. Kiesz shared this letter with Mr. Fode. Mr. Brown followed up by telephone with Ms. Kiesz and Mr. Sparks who both confirmed there were no water rights on the Sparks Parcel and there was only authorization to irrigate 80 of 415 acres on the Kiesz Parcel.

Ecology staff, including Mr. Brown, met with Ms. Kiesz in late June to discuss Mr. Fode's ongoing unauthorized irrigation. Ms. Kiesz indicated she had told Mr. Fode to stop irrigating the Kiesz Parcel. The next day, Mr. Brown had a telephone call with Mr. Fode and again told Mr. Fode he did not have authorization to irrigate the Wheeler Property.

On June 26, 2017, Ecology issued administrative orders to Mr. Fode, Ms. Kiesz, and Mr. Sparks directing them to cease and desist from any irrigation without water rights. One of the administrative orders was issued to Mr. Fode while another was issued to his landlords, Ms. Kiesz and Mr. Sparks. The cease-and-desist orders explained that Mr. Fode and his landlords were violating RCW 90.44.050 and chapter l73-130A WAC by irrigating absent legal authorization. Mr. Fode appealed the cease-and-desist order directed at him and those directed at his landlords. *See Fode v. Dep't of Ecology*, 22 Wn. App. 2d 22, 26, 509 P.3d 325 (2022).

Mr. Fode continued to irrigate throughout the remainder of the 2017 irrigation season. Ecology staff periodically visited the Wheeler Property throughout the 2017 irrigation season to document Mr. Fode's unauthorized irrigation. Mr. Brown created a form for Ecology employees who visited the Wheeler Property to record their observations of "(1) when the visits occurred, (2) where the pivots were located, (3) whether the pivots were on and irrigating, and/or (4) whether the fields were wet." CP at 2242. Ecology staff recorded and compiled their observations in the "Odessa Site Field Book." CP at 795-1062. Ecology staff visited the Wheeler Property "thirty-five to forty" times during the 2017 irrigation season. CP at 2366. Of those visits, 31 took place after Ecology issued its cease-and-desist orders. Ecology reported a pivot was "on" or a field was "wet" on 26 of the days Ecology employees visited the Wheeler Property after its cease-and-desist orders were served. CP at 2243.

Ecology assessed three civil penalties, one for each parcel, against Mr. Fode, Ms. Kiesz, and Mr. Sparks for Mr. Fode's illegal irrigation during the 2017 irrigation season. There were daily fines assessed, per parcel, for each day that Mr. Fode illegally irrigated after issuance of the cease-and-desist orders, totaling 103 days. Mr. Fode was fined $2,000 per day for illegal irrigation of the Fode Parcel totaling $206,000. Mr. Fode and Mr. Sparks were fined $1,000 per day for illegal irrigation of the Sparks Parcel totaling $103,000. Finally, Mr. Fode and Ms. Kiesz were fined $3,000 per day for illegal irrigation

7

of the Kiesz Parcel totaling $309,000.  The fines totaled $618,000.  Mr. Fode, Ms. Kiesz, and Mr. Sparks appealed the penalties to the PCHB.[4]

Following a three-day hearing in 2019 (2019 Hearing), the PCHB issued its "Findings of Fact, Conclusions of Law and Order."  CP at 1700-29.  The PCHB affirmed the penalties as lawful but reduced the penalty amount to $260,000.  In reducing the penalties, the PCHB noted that, "Ecology proved that Mr. Fode illegally irrigated on all of the days Ecology noted the pivots 'on' or 'wet,'" though it was more likely than not that Mr. Fode was irrigating throughout the 2017 season.  CP at 1726.  The PCHB held the "evidence presented by Ecology established that (a) Pivot 4 [Sparks Parcel] was 'on' or 'wet' on 12 days, (b) Pivot 5 [Fode Parcel] was 'on' or 'wet' on 15 days, and (c) Pivots 1, 2, or 3 [Kiesz Parcel] were 'on' or 'wet' on 25 days."  CP at 1726-27.  Thus, the PCHB concluded Ecology presented evidence of pivots "on" or "wet" for a total of 52 days.  CP at 1727.  The PCHB imposed a penalty of $5,000 per day for the 52 days of illegal irrigation resulting in a fine of $260,000.  Both Mr. Fode and Ecology appealed the PCHB's decision.

Meanwhile, this court decided the appeal of Ecology's cease-and-desist orders. *Fode*, 22 Wn. App. 2d 22.  There, Ecology appealed the trial court's summary judgment

---

[4] Ecology ultimately rescinded the penalties against Mr. Sparks and Ms. Kiesz, and Mr. Fode therefore became solely liable for all three penalties.

order concluding that Mr. Fode's appeals of the cease-and-desist orders were timely. *Id.* at 24. We affirmed the trial court. *Id.* Ecology also appealed the trial court's later order remanding the appeal of the cease-and-desist orders to the PCHB and staying Mr. Fode's and Ecology's penalty appeals. *Id.* We reversed that order, ruling, "the trial court should have instead remanded the appeal of the penalties to the PCHB." *Id.* Moreover, we recognized that "RCW 90.03.605(1) does require Ecology to provide written technical assistance prior to issuing a cease-and-desist order or penalties." *Id.* at 36. We urged the trial court to remand the penalty appeal to the PCHB with instructions to admit "any erroneously excluded technical assistance evidence and to enter amended findings of fact and conclusions of law." *Id.* at 37.

Following this court's decision, Mr. Fode and Ecology agreed to a limited remand of the penalty appeal for additional fact finding regarding Ecology's technical assistance efforts. The PCHB held a limited remand hearing (Remand Hearing) in 2023.

Ms. Kiesz, Mr. Fode, and Mr. Brown testified at the Remand Hearing. Mr. Fode chiefly argued that the penalties were invalid because he was not provided "technical assistance" before they were imposed. CP at 2204.

Following the Remand Hearing, the PCHB issued its "Amended Findings of Fact, Conclusions of Law and Order on Remand." CP at 2220-58. The PCHB's amended order largely affirmed and reiterated its earlier findings and conclusions. The PCHB concluded

9

that Ecology provided sufficient technical assistance and affirmed its earlier decision to

reduce Mr. Fode's penalties to $260,000.

In May 2024, the superior court granted the parties' joint motion to certify the matter

for direct review under RCW 34.05.518(1)(a), and the parties proceeded with their appeals.

ANALYSIS

Appeals from administrative decisions of the PCHB are governed by Washington's

Administrative Procedure Act (APA), chapter 34.05 RCW. *Burbank Irr. Dist. #4 v. Dep't of*

*Ecology*, 27 Wn. App. 2d 760, 771, 534 P.3d 833 (2023). The APA provides that a

reviewing court:

> [S]hall grant relief from an agency order in an adjudicative proceeding
> only if it determines that:
>
> . . . .
>
> (b) The order is outside the statutory authority or jurisdiction of the agency
> conferred by any provision of law;
>
> (c) The agency has engaged in unlawful procedure or decision-making
> process, or has failed to follow a prescribed procedure;
>
> (d) The agency has erroneously interpreted or applied the law;
>
> (e) The order is not supported by evidence that is substantial when viewed
> in light of the whole record before the court, which includes the agency record
> for judicial review, supplemented by any additional evidence received by the
> court under this chapter;
>
> . . . .
>
> (i) The order is arbitrary or capricious.

10

RCW 34.05.570(3).

Our review is de novo under RCW 34.05.570(3)(b) through (d), determining whether the decision contains an error of law. *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011). We "accord substantial weight to an agency's interpretation of a statute within its expertise . . . and to an agency's interpretation of rules that the agency promulgated." *Verizon NW, Inc. v. Wash. Employ. Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008) (citation omitted).

We apply the substantial evidence standard to challenges under RCW 34.05.570(3)(e) and determine whether there is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998) (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). We review the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact finding authority. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001). We accept the fact-finder's views regarding credibility of witnesses and the weight to be given competing inferences. *Id.*

For arbitrary and capricious challenges under RCW 34.05.570(3)(i), we determine whether the decision constitutes "'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *City of Redmond*, 136 Wn.2d at 46-47 (quoting *Kendall v. Douglas, Grant, Lincoln, & Okanogan Counties*

11

*Pub. Hosp. Dist. No. 6*, 118 Wn.2d 1, 14, 820 P.2d 497 (1991)). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *Id.* at 47.

The burden of demonstrating the invalidity of an agency action is on the party asserting the invalidity. RCW 34.05.570(1)(a). On review, "[t]he pertinent record is the record before the [PCHB]." *City of Union Gap v. State Dep't of Ecology*, 148 Wn. App. 519, 525, 195 P.3d 580 (2008).

TECHNICAL ASSISTANCE UNDER RCW 90.03.605

Mr. Fode argues that written technical assistance is a prerequisite to issuing penalties but that he was not provided with such assistance by Ecology. Therefore, Mr. Fode contends Ecology failed to follow a proscribed procedure under RCW 34.05.570(3)(c) and (d). Ecology responds that it provided Mr. Fode with technical assistance before issuing penalties and that the PCHB's findings to this effect are supported by substantial evidence. We agree with Ecology.

RCW 90.03.605(1) states:

> (b) When the department determines that a violation has occurred or is about to occur, it shall first attempt to achieve voluntary compliance. As part of this first response, the department shall offer information and *technical assistance to the person in writing* identifying one or more means to accomplish the person's purposes within the framework of the law[.]
>
> (c) If education and technical assistance do not achieve compliance the department shall issue a notice of violation, a formal administrative order under RCW 43.27A.190, or assess penalties under RCW 90.03.600 unless the

12

noncompliance is corrected expeditiously or the department determines no impairment or harm.

(Emphasis added.) In this court's prior decision, *Fode v. Department of Ecology*, we held "RCW 90.03.605(1) does require Ecology to provide written technical assistance prior to issuing cease-and-desist orders or penalties." 22 Wn. App. 2d. at 36. However, we did not analyze what "technical assistance" means.

The meaning of a statute is a question of law we review de novo. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). The court's fundamental objective is to ascertain and carry out the legislature's intent. *Id.* If the statute's meaning is plain on its face, then the court gives effect to that plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "Unlikely, absurd or strained results are to be avoided." *Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992).

According to the Senate Bill Report, the legislature's goal in enacting RCW 90.03.605 was to "achieve compliance with water laws by, first, using education and information; then, using information and technical assistance to achieve voluntary compliance; and, if neither of those achieves compliance, taking enforcement action." Senate Bill Report, 57th Leg. Sess., EHB 2993 (2002) at 1. The legislature's intent in requiring "technical assistance" before issuing penalties was to achieve voluntary compliance with Washington's water laws.

13

Here, Ecology attempted to work with Mr. Fode collaboratively to achieve his voluntary compliance with the law to no avail. The record reflects that Mr. Fode was told his seasonal change request was denied in February 2017, and he was instructed not to irrigate without water rights. In March, Mr. Brown called Mr. Fode and advised him once again not to irrigate the properties for which he did not have sufficient water rights. On May 16, 2017, Ecology sent letters to Ms. Kiesz and Mr. Sparks requesting information about water rights for their parcels, noting they had recently been irrigated. Though these letters were not sent directly to Mr. Fode, it is undisputed that the letters were shared with him. Mr. Fode and his landlords participated in numerous other phone calls with Mr. Brown in which water rights, or lack thereof, were discussed. Ms. Kiesz also participated in at least two in-person meetings with Mr. Brown regarding water rights. Finally, Ecology issued cease-and-desist orders to Mr. Fode in June and began assessing monetary fines against him.

Mr. Fode first contends that Ecology failed to provide him technical assistance within the meaning of RCW 90.03.605(1)(b). Mr. Fode argues technical assistance must be provided to "the person" who is the subject of Ecology's enforcement, here Mr. Fode. Appellant's Opening Br. at 41. Moreover, Mr. Fode posits the assistance must be "in writing," so, "a letter, email or written order" should have been delivered to him. Appellant's Opening Br. at 42. He argues Ecology failed to meet these requirements. Ecology responds that the PCHB correctly concluded that Ecology satisfied the technical assistance requirement of RCW 90.03.605(1)(b).

14

In this instance, the only technical assistance Ecology could provide to Mr. Fode was information that he did not have adequate water rights and that he could not withdraw and use public groundwater until he obtained legal authorization. Ecology did not have a duty, nor an ability, to waive legal requirements to accommodate Mr. Fode's desire to irrigate property for which he did not possess water rights. Mr. Fode seems to criticize the fact that some of the technical assistance that he was provided was given telephonically instead of through written instruments and that the letter he received was not provided directly to him.

Though it is prudent for Ecology to render its technical assistance via letter directly to the individual who is the subject of Ecology's enforcement action, we decline to invalidate otherwise valid penalties for this circumstance, which was inconsequential here. Further, even if we did not consider the phone calls or in-person meetings to be "technical assistance" within the meaning of RCW 90.03.605(1)(b), the May 16, 2017, letter satisfies the "in writing" requirement of the statute. CP at 1082-83. In that letter, Ecology noted that there was a substantial amount of land being irrigated "without authorization." CP at 1083. Ecology also requested records it "may have overlooked" that would authorize irrigation of those lands. CP at 1083. This was sufficient technical assistance as it informed Mr. Fode and his landlords that he was irrigating without a water right and requested records from him or his landlords if they had information to the contrary. Furthermore, though this letter was sent to Mr. Fode's landlords, there is no dispute the letter was provided to him. In sum,

Ecology provided Mr. Fode with adequate technical assistance before issuing cease-and-desist letters and assessing fines against him.

OFFICE DEADLINE FOR SEASONAL WATER RIGHT TRANSFERS

Mr. Fode argues that Ecology violated APA rule-making requirements when it implemented a February 15 office deadline for seasonal water right change requests. He additionally argues the February 15 office deadline is arbitrary and capricious because it is not strictly enforced. RCW 34.05.570(3)(i). We disagree.

*APA Rule Making*

Mr. Fode challenges Ecology's February 15 office deadline as an invalid rule under the APA. Ecology argues the office deadline is not a "rule" and that it was therefore not required to go through the APA's rule-making procedures before adopting the deadline.

The APA defines a "rule" as "any agency order, directive, or regulation of general applicability . . . which establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law." RCW 34.05.010(16)(c). If a rule is adopted without compliance with statutory rule-making procedures, "the court shall declare the rule invalid." RCW 34.05.570(2)(c).

Mr. Fode relies on *Hillis v. Department of Ecology* to support his argument. 131 Wn.2d 373, 932 P.2d 139 (1997). In *Hillis*, water right applicants filed a writ of mandamus seeking to force Ecology to process their applications. *Id.* at 377-78. Due to budget restraints and staff shortages, there were about 5,000 outstanding applications seeking the

appropriation of public water. *Id.* at 378. Consequently, Ecology established criteria to prioritize certain water rights applications over others. *Id.* at 378-79. The trial court found that Ecology had not followed the rule-making process of the APA as it pertained to Ecology's duty to investigate. *Id.* at 379-80. Our Supreme Court affirmed, reasoning that "water applicants have the right under [RCW 90.03.290] to have their application investigated and decided upon." *Id.* at 399. Thus, the court held that "when Ecology sets out priorities and establishes prerequisites to those decisions, the agency should engage in rule making so the public has some input into those decisions." *Id.* The court noted that the "purpose of rule-making procedures is to ensure that members of the public can participate meaningfully in the development of agency policies which affect them." *Id.*

Here, like in *Hillis*, the question is whether Ecology's February 15 office deadline for seasonal water transfers is a "qualification or requirement" relating to the enjoyment of benefits conferred by law. *Hillis*, 131 Wn.2d at 399; *see also* RCW 34.05.570(2)(c). Mr. Fode argues, "Ecology's refusal to accept and assist with a late-filed seasonal transfer application, and later issuance of penalties, alters or revokes a water user's right to processing of seasonal transfer applications and Ecology's duty to provide technical assistance in the form of those transfers." Appellant's Opening Br. at 46.

First, as explained above, Ecology did not have a duty to provide technical assistance by finding water for Mr. Fode's use. Instead, Ecology was required to, and did, provide technical assistance by informing Mr. Fode he did not have legally available water and

17

requesting that he stop using water without authorization. Second, there is no right for water users to have their seasonal change applications processed on a certain timeline. RCW 90.03.390 states:

> RCW 90.03.380 shall not be construed to prevent water users from making a seasonal or temporary change of point of diversion or place of use of water when such change can be made without detriment to existing rights, but in no case shall such change be made without the permission of the water master of the district in which such proposed change is located, or of the department.

The benefit conferred by law is the ability to request "a seasonal or temporary change of point of diversion or place of use" with "the permission of the water master." RCW 90.03.390.

Mr. Fode's argument is that the February 15 office deadline is a "qualification" on the right to make a seasonal change. Importantly, however, the statute does not guarantee that a seasonal change application will be granted. In contrast, in *Hillis*, the statute at issue, RCW 90.03.290, states Ecology has a "duty to investigate the application, and determine what water, if any, is available for appropriation." 131 Wn.2d at 384. The court in *Hillis* reasoned Ecology's decision to prioritize certain applications over others was a qualification on a water user's right to have their application investigated. *Id.* at 399.

Furthermore, Mr. Brown testified before the PCHB that Ecology receives over 100 seasonal change applications per year, and it can take him up to three months to work through them. Unlike in *Hillis* where permit applications were processed over a period of

years, seasonal change applications are just that: seasonal.  They become moot within

months.

Ecology's February 15 deadline for submission of seasonal change applications was

not a "rule" and therefore did not require APA rule-making procedures.

*Arbitrary and Capricious*

Mr. Fodes next argues the February 15 office deadline is arbitrary and capricious

under RCW 34.05.570(3)(i) because it is not strictly enforced.  Mr. Fode points to Ecology's

admission that it processes some seasonal water right transfers after the February 15 office

deadline.

As Ecology points out, the testimony before the PCHB was that a "majority of

[Ecology's] seasonal change requests are" relatively simple while some other "applications

can be more extensive."  CP at 2321-22.  Mr. Brown testified that many of Ecology's

"seasonal change participants have a long history of being in the program" and are "easier to

work with than some that are brand-new or have other complications."

CP at 2322.  Mr. Brown also testified that Ecology "typically send[s] out a notice to all

participants [from] the previous year, sometime around November, reminding them of the

seasonal change" program for the next year and informing them of the February 15 deadline

for application submission.  CP at 2322.

Mr. Brown claimed that he offered to process a late-filed seasonal change application

for Ms. Kiesz the following year but pointed out that he had already been working with her

19

and Mr. Fode on the seasonal transfer "for three months." CP at 2504. In contrast, in 2017, the year at issue, Ms. Kiesz first discussed attempting to do a seasonal water transfer with Mr. Brown in March, well after the February 15 office deadline.

Given the facts and circumstances surrounding Ecology's decision not to accept Mr. Fode's or Ms. Kiesz's late seasonal change application, had one been filed, it was not arbitrary and capricious. Moreover, Ecology's February 15 office deadline for filing of seasonal water right transfer applications was not arbitrary and capricious.

> DAILY PENALTIES FOR EACH ILLEGALLY IRRIGATED PARCEL UNDER
> RCW 90.03.600

Mr. Fode argues Ecology exceeded its statutory authority when it levied penalties against him for more than the $5,000 per day statutory limit. RCW 34.05.570(3)(b). He also argues Ecology's assessment of penalties was arbitrary and capricious. RCW 34.05.570(3)(i). We disagree.

RCW 90.03.600 provides, in relevant part:

> Except as provided in RCW 43.05.060 through 43.05.080 and 43.05.150, *the department of ecology may levy civil penalties ranging from one hundred dollars to five thousand dollars per day for violation of any of the provisions of this chapter* and chapters 43.83B, 90.22, and 90.44 RCW, and rules, permits, and similar documents and regulatory orders of the department of ecology adopted or issued pursuant to such chapters. The procedures of RCW 90.48.144 shall be applicable to all phases of the levying of a penalty as well as review and appeal of the same.

(Emphasis added.)

*Statutory Authority*

Mr. Fode contends Ecology exceeded its statutory authority when it issued penalties based on the property ownership of each parcel that, when combined, exceeded the $5,000 per day limit. In other words, Mr. Fode argues he was erroneously issued individual penalties for unauthorized irrigation of the Fode Parcel, the Kiesz Parcel, and the Sparks Parcel that exceeded the $5,000 per day statutory limit.

This issue hinges on the definition of "violation" as used in RCW 90.03.600. Mr. Fode argues his daily unauthorized irrigation was one violation while Ecology posits that it was well within its authority to treat the unlawful irrigation of each parcel as separate violations.

Ecology relies on *Honeywell v. Department of Ecology*, 2 Wn. App. 2d 601, 413 P.3d 41 (2017). In *Honeywell*, the Honeywells purchased 40 acres of land on the southwestern shoreline of San Juan Island and hired a contractor to clear brush and trees from their property. *Id.* at 604. The waters adjacent to the Honeywells' property are considered a "shoreline of statewide significance" under the Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW. *Id.* It was discovered that about 80 trees had been cut down, and Ecology therefore imposed "a shoreline penalty of $55,000 on the Honeywells for the unauthorized removal of vegetation, including the 80 trees." *Id.* at 605. Ecology treated the cutting of each tree with a diameter greater than five inches as a separate violation. *Id.* at 606.

On appeal, the Honeywells argued Ecology was limited to a $1,000 penalty per violation under RCW 90.58.210 and that the cutting of the trees was one single violation. *Id.* at 606. The court found RCW 90.58.210 ambiguous as it did not define "what acts constitute separate violations." *Id.* at 609. However, the court held interpreting the statute as limiting Ecology to a single $1,000 civil penalty per instance of unpermitted cutting would lead to absurd results because a single unpermitted tree cutting would have the same penalty as 100 unauthorized tree cuttings. *Id.* at 610. The court reasoned that adopting the Honeywells' interpretation "would limit [Ecology] to imposing at most a $1,000 penalty in both situations, despite the significant disparity in the harm caused." *Id.* at 609-10. Thus, the court held that each cut tree was a separate violation of the SMA. *Id.* at 610.

We find *Honeywell* persuasive. Like in *Honeywell*, Mr. Fode's proposed interpretation would lead to absurd results. As Ecology points out, under Mr. Fode's interpretation, an individual or corporation could illegally irrigate hundreds of expansive parcels and Ecology would only be authorized to issue, at most, one $5,000 penalty per day. Meanwhile, an individual unlawfully irrigating a single small parcel could be subject to the same penalty, though the harm caused would be much less.

Additionally, the legislative intent behind chapter 90.03 RCW is to "promote the use of the public waters in a fashion which provides for obtaining maximum net benefits arising from both diversionary uses of the state's public waters *and the retention of waters within streams and lakes in sufficient quantity and quality to protect instream and natural values*

22

*and rights.*" RCW 90.03.005 (emphasis added). Chapter 90.44 RCW, titled "Regulation of Public Groundwaters" is a supplemental chapter to 90.03 RCW and was "enacted for the purpose of extending the application of such surface water statutes to the appropriation and beneficial use of groundwaters within the state." RCW 90.44.020. Importantly, the Odessa Groundwater Management Subarea has been of particular concern because it has experienced a steady decline in groundwater since 1967. WAC 173-128A-020. Restricting Ecology to imposing one fine for illegal irrigation of multiple parcels would frustrate its ability to enforce the legislature's clear intent to protect and preserve Washington's water resources.

Mr. Fode also posits that allowing daily penalties for each parcel resulted in penalties exceeding the $5,000 maximum per day penalty for violations. RCW 90.03.600. This argument is unpersuasive. Because Mr. Fode committed three separate violations by illegally irrigating three parcels, Ecology was allowed to assess up to a $5,000 penalty, per day, per violation. Moreover, accepting Mr. Fode's argument, that Ecology could only assess a total of $5,000 in fines per day no matter how many distinct violations were committed, would lead to absurd results. It would mean an individual who committed 20 water code violations would be subject to the same maximum penalty as someone who committed a single violation. We decline to interpret RCW 90.03.600 as allowing a maximum of $5,000 in penalties per day regardless of the number of violations an

23

individual commits. Ecology did not exceed its statutory authority when it treated Mr.

Fode's unlawful irrigation of each parcel as a separate violation.

*Arbitrary and Capricious*

Mr. Fode also argues that Ecology's decision to issue penalties per day for the illegal

irrigation of multiple parcels was arbitrary and capricious because Ecology could "expand

its penalty authority and arbitrarily impose penalties beyond the statutory maximum by

dividing a violation . . . into multiple units, such as acres, plants, sprinklers or even

molecules of water." Appellant's Opening Br. at 52; *see also* RCW 34.05.570(3)(i). Mr.

Fode's argument requires us to speculate about whether Ecology's potential future decisions

to fine individuals would be arbitrary and capricious. We decline to do so.

Here, Ecology's decision to assess individual per day penalties for each parcel

Mr. Fode illegally irrigated was not arbitrary and capricious. If, in the future, Ecology

attempts to penalize Mr. Fode or others for individual "molecules of water" unlawfully

irrigated, that individual could and should bring an action challenging Ecology's decision as

arbitrary and capricious. Appellant's Opening Br. at 52. However, here, Ecology's decision

to issue separate penalties for each parcel Mr. Fode illegally irrigated was not an

unreasonable action taken without regard to the specific facts and circumstances of this case

and was therefore not arbitrary and capricious.

Ecology's decision to penalize Mr. Fode for each parcel he illegally irrigated did not

exceed Ecology's statutory authority nor was it arbitrary and capricious.

CONTINUOUS VIOLATIONS UNDER RCW 90.03.600

In its cross appeal, Ecology argues the PCHB erred by reducing Mr. Fode's fines because it based its decision on an erroneous interpretation of the law. RCW 34.05.570(3)(d). Mr. Fode responds that PCHB's decision to reduce his fines was proper. We agree with Mr. Fode.

RCW 90.44.050 prohibits the withdrawal of public groundwater without a permit. Moreover, RCW 90.03.600 states:

> In determining the amount of a penalty to be levied, the department shall consider the seriousness of the violation, whether the violation is repeated or continuous after notice of the violation is given, and whether any damage has occurred to the health or property of other persons. Except as provided in RCW 43.05.060 through 43.05.080 and 43.05.150, the department of ecology may levy civil penalties ranging from one hundred dollars to five thousand dollars per day for violation of any of the provisions of this chapter and chapters 43.83B, 90.22, and 90.44 RCW, and rules, permits, and similar documents and regulatory orders of the department of ecology adopted or issued pursuant to such chapters.

Ecology argues the PCHB erroneously interpreted RCW 90.03.600 to only allow penalties for days Ecology directly observed unlawful irrigation. Mr. Fode responds that the PCHB correctly concluded he could be penalized only for those days that Ecology directly observed his unlawful irrigation.

Following the Remand Hearing, the PCHB upheld its 2019 decision to reduce Mr. Fode's penalties from $618,000 to $260,000. The PCHB found Ecology only proved a violation on "days that Ecology reported that a pivot was 'on' or 'wet.'" CP at 2256.

25

Ecology posits the plain language of the statute contemplates a continuing violation lasting more than a day and that the statute does not require that Ecology prove each violation with direct evidence that it observed irrigation on that day. Mr. Fode contends the statute merely requires Ecology to consider whether a violation is continuous as one of several factors in assessing the amount of the fine and that the PCHB properly required Ecology to prove his violations with direct evidence it observed irrigation. Based on the facts before us, we conclude the PCHB did not misinterpret the law.

RCW 90.03.600 clearly contemplates "per day" penalties for violations. Once a violation is established, Ecology then considers the seriousness of the violation and whether the violation is repeated or continuous in determining the amount of a penalty to be levied. In other words, Ecology may not levy fines for every single day of the irrigation season without providing evidence from which a trier of fact finds that an individual *actually* illegally irrigated on a continuous basis. As Mr. Fode points out, the plain language of the statute demonstrates that whether a violation is "continuous" is a factor used in assessing the amount of a fine. RCW 90.03.600. Furthermore, though the statute does not explicitly or implicitly require that Ecology directly observe each distinct violation, it does state that Ecology may levy a fine "per day for violation of" the water code. RCW 90.03.600.

Ecology argues it can prove "continuing violations" occurred over a period of time by, for instance, presenting evidence that crops with substantial irrigation requirements are observed green and growing. Although the "continuing violations" provision of the statute

26

goes to the amount of the penalty to be levied, we agree that Ecology may prove repeated daily violations without Ecology staff having to witness illegal irrigation on each day of the growing season. Ecology may meet this burden by presenting competent evidence, presumably through an expert witness, supporting a trier of fact in finding directly or by inference that water was necessarily used for crops to grow at a specific rate. Here, Ecology failed to meet this burden before the PCHB, and with the evidence that Ecology presented, the PCHB declined to draw an inference of continuous violation in the manner Ecology sought. Instead, Ecology's only competent evidence regarding the days Mr. Fode illegally irrigated was its staff's observations.

Ecology further contends that, if it could only prove violations by sending its employees out to remote locations to observe irrigation, its resources would be constrained and individuals could simply irrigate at off times to avoid detection. Because alternative means may be presented to prove illegal irrigation, we disagree.

The PCHB did not err when, based on the record before it, the PCHB required that Ecology prove Mr. Fode illegally irrigated on the days it assessed penalties levied against him. Thus, the PCHB's decision to reduce Mr. Fode's penalties to $260,000, reflecting penalties assessed only for days Ecology staff directly observed irrigation or wet crops or pivots, was not erroneous.

REASONABLENESS OF THE $260,000 PENALTY

Mr. Fode argues the PCHB misapplied evidentiary standards and erroneously found Ecology's $260,000 fine was reasonable. Specifically, Mr. Fode argues the PCHB misapplied evidentiary standards by basing daily fines on observed "wetness" and allowing undated aerial imagery and expert testimony as evidence that Mr. Fode did not fallow[5] the Schrag Property. Further, he argues the PCHB mistakenly found his testimony that he fallowed the Schrag Property not credible. Finally, Mr. Fode argues the PCHB misapplied the penalty reasonableness factors and imposed unreasonable penalties. We disagree.

*Daily Fines for Observed "Wetness"*

Mr. Fode argues Ecology did not meet its burden of proof when it found 52 distinct violations based on Ecology's observations of wet fields or active irrigation. Specifically, he contends that he provided evidence that observed "wetness" could be explained by evapotranspiration, osmotic pressure, capillary action from plants, and dew action. Appellant's Opening Br. at 54. We conclude Ecology provided sufficient evidence that Mr. Fode irrigated on the days in question.

Following the Remand Hearing, the PCHB affirmed its 2019 conclusion that "Ecology proved that Mr. Fode illegally irrigated on all of the days that Ecology noted the

---

[5] "Fallow" is defined as "the plowing or tilling of land without sowing it for a season." MERRIAM-WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 819 (1961).

pivots 'on' or 'wet,'" on 52 days in total and that "Mr. Fode did not rebut Ecology's evidence on this issue." CP at 2256. On appeal, Mr. Fode argues he did rebut Ecology's evidence at the 2019 Hearing when he testified that a field may appear wet for days or weeks after it was last irrigated. He contends the PCHB ignored "substantial evidence" provided by him that observed wetness was not due to irrigation and that Ecology should not be permitted to prove irrigation violations by mere observed "wetness." Appellant's Opening Br. at 55.

At the 2019 Hearing, Mr. Fode testified that "evapotranspiration," "osmotic pressure," or "dew action" could cause a field to look wet on days that irrigation did not occur. CP at 2846-50. When asked whether that would "explain . . . many of the wet observations taken in the a.m. hours," Mr. Fode answered, "Yes." CP at 2847. However, Mr. Fode did not identify which days he argued wetness was not caused by irrigation.

Moreover, substantial evidence in the record supports the court's findings and conclusions that Ecology proved Mr. Fode illegally irrigated on at least 52 days in 2017. Mr. Fode points out that "Ecology's own record of inspections includes evidence that 'wetness' on some days was most likely caused by rainfall." Appellant's Opening Br. at 55. On one day, the field book did note that the wet fields were likely due to rain the night before but the PCHB did not assess a penalty for any of the parcels for this day. On another day that wet fields were observed, which Mr. Fode now argues could have been because of

rain, active irrigation was observed on the same parcel therefore warranting a fine regardless.

Mr. Fode's argument boils down to the weight that should be given to Ecology's evidence of wet fields in determining whether Mr. Fode illegally irrigated that day. In light of competing evidence, we will not substitute our judgment for that of the PCHB. *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004). Based on the evidence before it, the PCHB did not err in concluding Mr. Fode unlawfully irrigated on days Ecology observed his fields were wet. Thus, the court's conclusion that Ecology proved Mr. Fode illegally irrigated on at least 52 days, even where Ecology only observed "wetness" is supported by substantial evidence.

*Evidence Mr. Fode did not Fallow the Schrag Property*

Mr. Fode next argues the PCHB erred when it allowed undated aerial images and expert testimony as evidence the Schrag Property was not fallowed.[6] Ecology responds that the PCHB correctly admitted this evidence.

We review the PCHB's evidentiary rulings for abuse of discretion. *Port of Seattle*, 151 Wn.2d at 642. Here, at the Remand Hearing, the hearing officer admitted an aerial

---

[6] Mr. Fode argues that whether he fallowed the Schrag Property is important because he allegedly did this so that water rights for the Schrag Property could be seasonally transferred to avoid violations. He also argues it is relevant to the "seriousness of the violation" factor for penalty reasonableness. Appellant's Opening Br. at 56.

photograph and a Google Earth photograph over Mr. Fode's objection. Mr. Brown gave his opinion, based on the photographs and his experience, regarding whether the Schrag Property was irrigated in 2017. Mr. Fode contends this was error because Mr. Brown has no expertise in farming or irrigation.

WAC 371-08-500(1) states that "[e]vidence, including hearsay evidence, is admissible if in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs" at hearings before the PCHB. *See also* RCW 34.05.452(1). The rule also provides that "[a]ll relevant evidence is admissible which, in the opinion of the presiding officer, is the best evidence reasonably obtainable, having due regard for its necessity, availability and trustworthiness." WAC 371-08-500(1).

At the Remand Hearing, Mr. Fode objected to admission of Google Earth photographs depicting the Schrag Property in 2017 based on a lack of foundation. The hearing officer disagreed, stating the images were "the kind of evidence on which reasonably prudent persons are accustomed to rely on the conduct of their affairs." CP at 3108. Based on the provisions of WAC 371-08-500(1), this was not error and the hearing officer did not abuse her discretion.

Furthermore, Mr. Brown testified that based on the aerial photographs, it was his opinion that the Schrag Property was being "irrigated and farmed" in 2017. CP at 3111. Prior to Mr. Brown's testimony, Mr. Fode objected, arguing Mr. Brown was not

"appropriately qualified as an expert." CP at 3104. The hearing officer did not rule on the objection but instead stated she wanted to "look at the exhibit first." CP at 3104. Mr. Fode's objection to Mr. Brown's testimony was not revisited. Now, Mr. Fode argues Mr. Brown should not have been permitted to provide his opinion on whether the Schrag Property was fallowed in 2017.

Whether a witness may provide expert testimony is a two-pronged inquiry: (1) the witness must qualify as an expert, and (2) the witness' opinion must be helpful to the trier of fact. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 102, 882 P.2d 703, 891 P.2d 718 (1994). Assuming the error is preserved, the hearing officer did not abuse her discretion when she allowed Mr. Brown to provide his expert opinion. Ecology noted at the Remand Hearing that Mr. Brown was "qualified as an expert on irrigated agriculture given his familiarity and his experience and his education" at the 2019 Hearing. CP at 3099. Mr. Brown, at the 2019 Hearing, was allowed to provide his opinion regarding "whether a green field has been irrigated." CP at 2387. At the 2019 Hearing, Mr. Brown testified to his education, experience, and familiarity with the Washington State Irrigation Guide. Based on Mr. Brown's qualifications, the hearing officer did not abuse her discretion when she allowed him to testify to his opinion about whether aerial imagery of the Schrag Property showed it had been irrigated.

*Finding that Mr. Fode did not Fallow the Schrag Property*

Next, Mr. Fode argues "substantial evidence" showed he fallowed the Schrag Property in 2017. Appellant's Opening Br. at 57. Following the hearing on remand, the PCHB "g[ave] more weight to Ecology's evidence and [did] not find credible" Mr. Fode's testimony that he did not irrigate the Schrag Property in 2017. CP at 2237-38. We decline to disturb the PCHB's credibility determination and supported factual finding.

Mr. Fode points to his testimony at the Remand Hearing that he fallowed the Schrag Property in 2017 as well as exhibits demonstrating reduced crop yields and reduced power usage from 2016 to 2017. As explained above, Mr. Brown testified it was his opinion, based on aerial photographs, that Mr. Fode irrigated the Schrag Property in 2017. Additionally, though Mr. Fode testified at the Remand Hearing that he did not irrigate the majority of the Schrag Property, he was impeached with his deposition testimony in which he admitted to growing alfalfa and "lightly irrigating" portions of the Schrag Property in 2017. CP at 3076.

We do not reweigh credibility or substitute our judgment for that of the PCHB. *Port of Seattle*, 151 Wn.2d at 588. On appeal, we will not find persuasive what the PCHB did not. The PCHB's finding is supported by substantial evidence in the record.

*Reasonableness of Penalties*

Finally, Mr. Fode argues the PCHB misapplied penalty reasonableness factors and imposed unreasonable penalties. He contends, in assessing the seriousness of the violations,

Ecology and the PCHB failed to consider his fallowing of the Schrag Property to avoid negatively impacting the groundwater supply, as well as Ecology's "failure to provide technical assistance." Appellant's Opening Br. at 5. Further, Mr. Fode argues the record reflects he has not committed repeat violations. Finally, he posits Ecology had no evidence that his illegal irrigation damaged the health or property of others. Mr. Fode requests that we "re-evaluate the seriousness of any violations and determine a reasonable penalty amount based on the record." Appellant's Opening Br. at 61.

RCW 90.03.600 provides the relevant factors to be considered in imposing penalties: "In determining the amount of a penalty to be levied, the department shall consider the seriousness of the violation, whether the violation is repeated or continuous after notice of the violation is given, and whether any damage has occurred to the health or property of other persons."

As to his arguments regarding the "seriousness of the violation" factor, we already determined that Ecology *did* provide adequate technical assistance. RCW 90.03.600. Thus, the PCHB did not err when it did not consider Ecology's alleged lack of technical assistance in assessing the reasonableness of the fines. Moreover, though the PCHB did not find Mr. Fode's testimony that he fallowed the Schrag Property credible, it nevertheless noted that his decision to "fallow some of the Schrag acreage" was a "remedial action." CP at 2254. However, the PCHB explained Mr. Fode never informed Ecology any acreage was being

34

fallowed. The PCHB properly considered the "seriousness of the violation" factor, and its findings are supported by substantial evidence. RCW 90.03.600.

As to whether the violation is repeated or continuous, the PCHB found Mr. Fode did not have any previous administrative orders that resulted in penalties. However, it did find that water use should have stopped immediately after Ecology issued its cease-and-desist order. The PCHB properly considered whether Mr. Fode's violations were "repeated or continuous," and its findings related to this factor are supported by substantial evidence. RCW 90.03.600.

Finally, as to whether damage occurred to the health and property of others, the PCHB, in finding the violation was "extremely serious," noted that the Odessa Groundwater Management Subarea "is in great jeopardy after decades of declining aquifer levels." CP at 2253; *see also* WAC 173-128A-020. WAC 173-128A-020(1) states, "Since 1967, the segment of the Columbia basin groundwater system centered around the community of Odessa has experienced a steady decline in groundwater levels." Mr. Fode argues there was no direct evidence of harm to the Odessa Groundwater Management Subarea's groundwater resources, just "inferences and assumptions." Appellant's Opening Br. at 60. However, any unauthorized use of groundwater is harmful as it further depletes already declining groundwater resources. The PCHB properly considered this factor and its findings are supported by substantial evidence.

No. 40449-8-III
*Fode v. Dep't of Ecology*

The PCHB did not misapply evidentiary standards and the penalties totaling

$260,000 were reasonable.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Murphy, J.

_____
Birk, J. [†]

---

[†] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division three pursuant to CAR 21(a).

36